# W. A. S. WHEELER, APPELLANT, VS. HENRY BAARS, APPELLEE.

ACTION FOR DECEIT—PROOF OF SCIENTER—PRINCIPAL AND AGENT BOTH LIABLE FOR AGENT'S DECEIT—FAILURE TO SEARCH RECORDS NO DEFENSE TO PARTY DECEIVING—COURT MUST NOT INSTRUCT ON THE WEIGHT OF EVIDENCE.

1. A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance.

2. The knowledge, by the maker of the representation, of its falsity, or, in technical phrase, the *scienter*, can be established by either one of the three following phases of proof: (1) That the representation was made with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity. Under the first phase the proof must show actual knowledge of the falsity of the representation. Under the second phase it should show that the representation was made in such absolute, unqualified and positive terms as to imply that the party making it *had knowledge* of its truth, and that he made such absolute, unqualified and positive assertion on a subject of which he was ignorant, and that he had no knowledge whether his assertion in reference thereto was true or false. Under the third phase the proof should show that the party occupied such a special situation or possessed such means of knowledge as made it his *duty* to know as to the truth or falsity of the representation made. If the proof establishes either one of these three phases, the *scienter* is sufficiently made out.

3. The requisite *intent to deceive* in such cases is to be inferred from the facts in proof.

4. The *laches* of a party, to whom a misrepresentation of a material fact has been made, in failing to search public records or other accessible sources of information that would have disclosed the falsity of the representation made, furnishes no excuse or defense to the party guilty of the misrepresentation in an action for deceit thereon.

5. For deceit and false representations made by an agent in the course of his employment, both the principal and his agent are civially liable; and, so far as the liability of the principal is concerned, it makes no difference whether he authorized, or was cognizant of the misrepresentation and deceit of his agent or not.

6. It is the exclusive right of the jury to determine how much and what comparative *weight* they will give to the different kinds of evidence submitted in a cause; and it is error for the court to instruct them, as matter of law, that one kind of evidence is entitled to more or greater weight than another kind.

Appeal from 'the Circuit Court, for Escambia county.

The facts in the case are stated in the opinion of the court.

*Jno. C. Avery* and *Richard L. Campbell* for Appellant.

*Blount & Blount* for Appellee.

TAYLOR, J.:

Henry Baars, the appellee, sued the appellant in the Circuit Court of Escambia county in' an action for deceit in the sale of a steam tug boat, and recovered judgment for $381.64, from which the defendant below appeals.

The original declaration contains four counts in substance as follows: (1) That on March 28th, 1884, the plaintiff bought of defendant, as trustee of Piaggio

Bros., one steam tug called "Jumbo," for a large sum of money, *viz*: The sum of $4,250, and that upon said sale the defendant falsely and fraudulently represented that said steam tug was free from all liens and encumbrances, whereas in truth and in fact there was a lien upon said tug for the sum of $246, of which said lien the defendant well knew, and of which plaintiff was ignorant. That since said purchase plaintiff has been compelled to pay the full amount of said lien in order to prevent a sale of the said tug to pay same, which lien together with interests and costs of suit brought by the said lien holders to enforce same, and which plaintiff was also compelled to pay, amounts to $337.54. (2) The second count is substantially the same as the first except that it alleges that the false representation by the defendant was made in order to induce the plaintiff to purchase said tug. (3) The third charges that the defendant, craftily and fraudulently intending to deceive the plaintiff and to benefit himself thereby, as agent of one Rinaldo Piaggio, caused the plaintiff and others to purchase on March 28th, 1884, of the said Rinaldo Piaggio a steam tug called "Jumbo," and in order to effect said sale falsely and fraudulently represented to plaintiff that the said tug was free from all liens and encumbrances, whereas in truth and in fact, as defendant ought to have known, there was a lien upon said tug and of which plaintiff was ignorant; and plaintiff has been compelled to pay the full amount of said lien together with the costs of suit brought to enforce the same, amounting to $337.54. (4) The fourth count alleges that the defendant as trustee for Piaggio Bros. and R. L. Campbell, on and prior to the sale of said tug boat to the plaintiff, falsely and wrongfully intending to deceive the plaintiff to his own profit and advantage failed to in-

form plaintiff that there was a claim existing against
said tug, although plaintiff particularly inquired of
him whether there was any claim upon said tug, and
although defendant knew at the time of said inquiry
that W. F. & J. E. Creary had a claim against said
tug for $242.06, and that they had brought suit there-
upon, and that of the existence of such claim plaintiff
remained ignorant until after his purchase of said tug,
and that he was compelled to pay the judgment for
$337.50 that said parties afterward recovered on said
claim against said tug in order to save her from sale
thereunder.

Before plea by the defendant the plaintiff filed, as
an amendment to his declaration, three additional
counts, besides the common count for money had and
received, in substance as follows:     (1) That the defend-
ant as trustee for Piaggio Bros. and R. L. Campbell
negotiated with plaintiff's agent, one William Elias,
for the sale of said steam tug to plaintiff, and that dur-
ing the pendency of said negotiations that were con-
summated by a sale on March 28th, 1884, of said tug
to plaintiff, defendant falsely and fraudulently war-
ranted said boat to be free from all encumbrances in
the shape of claims, whereas in truth and in fact the
firm of W. F. & J. E. Creary had a claim against the
tug which, since said sale to plaintiff, the Circuit Court
of Escambia county and the Supreme Court of Florida
have adjudged to be a valid lien upon said tug for ma-
terials and repairs amounting to $246.02, and plaintiff
was compelled to pay the full amount of same with
costs of suit, amounting in all to $337.54.     (2) The
second additional count charges substantially that the
defendant as agent for Rinaldo Piaggio, while con-
ducting negotiations that culminated on March 28th,
1884, in the sale of the steam tug Jumbo by the said

Rinaldo Piaggio to plaintiff, falsely and fraudulently warranted that no claims existed against said steam tug, whereas in truth and in fact a claim of W. F. & J. E. Creary for materials and repairs, amounting to $246.02, did so exist, which, since said sale to plaintiff the Circuit Court of Escambia county and the Supreme Court of Florida have adjudged to be a valid lien upon said tug, and plaintiff has been compelled to pay same with costs of suit brought to enforce same, amounting in all to $337.54. The third additional count of the amended declaration it is unnecessary to notice, as it was withdrawn by the plaintiff before the submission of the cause to the jury.

To the original and amended declaration the defendant pleaded the general issue of not guilty, and "never was indebted" to the common count for money had and received.

The testimony for the plaintiff was as follows: William Elias deposed for the plaintiff that his occupation was that of a commission agent, that he resided in London, England. I acted as agent for Henry Baars, and as such agent entered into negotiations with defendant Wheeler for the purchase on behalf of plaintiff Henry Baars, of the steam tug "Jumbo," Prior to said sale by Wheeler I did speak to him in regard to the existence or non-existence of claims against said steam tug. I spoke to him on this subject a few days prior to the date on which the tug had been advertised for public sale in the Pensacola papers. I can not now recall the exact date. The conversation took place in one of the rooms of the First National Bank, Pensacola, and Wheeler assured me that there were, with the exception of that of the First National Bank, no claims of any kind against the said steam tug "Jumbo," and he further said, in order to prove such assertions

to be correct, that had there been any claims, all claims would have been sent in to the First National Bank, as that institution had advertised said steam tug for sale by public auction in various papers and there were no claims lodged. I made such investigation in regard to claims against said boat in the interest of Henry Baars and at his special request. I certainly did not know at the time or before I was negotiating said sale from defendant to plaintiff of the existence of any claim against the Jumbo by W. F. & J. E. Creary, and I first heard of such claim being put in when Creary started an action against the tug boat Jumbo some long time after I had completed the purchase of said tug on behalf of the plaintiff Henry Baars. The defendant Wheeler distinctly told me that if I bought the tug there were no claims out against her for which my principal, Henry Baars (not then known to Wheeler), would be responsible. If such a claim as Creary's was known it was only known to the defendant Wheeler. I certainly was not informed of it. Had I been so informed I certainly should have insisted on such claim's being satisfied before concluding the purchase on behalf of my client, the plaintiff Henry Baars.

The plaintiff also introduced the record in a suit instituted on March 20th, 1884, and the judgment therein in the Circuit Court of Escambia county in favor of W. F. & J. E. Creary against R. & D. Piaggio, as owners of the steam tug Jumbo, in which their claim was adjudged to be a superior lien on said tug boat. In which suit a writ of garnishment was issued on the 4th day of April, 1884, and served same day on the defendant W. A. S. Wheeler, as garnishee, requiring him to show upon oath what moneys, etc., he held of the said R. & D. Piaggio. The garnishee (the defendant

herein) answered said writ on the second day of June, 1884, in which he averred that he then had no money or effects of the said Piaggios in his possession, and was not indebted to them except as follows: "That Richard L. Campbell held a mortgage on the steam tug Jumbo, owned by the defendants (Piaggios), and that mortgage debt being due and unpaid, the said Campbell and the Piaggios appointed him (Wheeler) their trustee to take and sell the said tug and apply the proceeds of the sale to the satisfaction of said mortgage debt. He accepted said trust and sold the said tug, realizing from the sale less than the amount of the said mortgage debt, two hundred and fifty dollars of the proceeds of said sale still remaining in his hands to be disposed of as the court should direct." This record shows that W. F. & J. E. Creary recovered judgment on their claim against the Piaggios on December 19th, 1884, for $266.70, the judgment declaring it to be a lien on said steam tug, and that she be sold to satisfy same. This record shows further that upon execution being issued on the judgment in favor of the Crearys and levied on said steam tug, the plaintiff in this suit, Henry Baars, interposed a claim thereto, giving the usual claim bond. It shows further that upon the trial of this claim it was adjudged that said tug was subject to the lien of the judgment and execution of the Crearys. From this judgment the claimant, Henry Baars (the plaintiff herein) took an appeal to the Supreme Court where the judgment of the lower court upon his claim was affirmed (23 Fla., 311, 2 South. Rep., 662).

The garnishment against the defendant, Wheeler, in the suit of Creary against the Piaggios was dismissed according to the evidence, but the record before us

does not show when or at whose instance it was dismissed.

The plaintiff, Henry Baars, on his own behalf, testified that William Elias was directed by him as his agent to call upon Mr. Wheeler, who had the steam tug Jumbo for sale, and negotiate the purchase of her for him. He purchased her for him; subsequently he was compelled to pay the lien of W. F. & J. E. Creary on the Jumbo, which the Supreme Court of the State held was a valid lien on her. This closed the testimony on behalf of the plaintiff.

The defendant then on his own behalf testified as follows: I remember Mr. Elias calling on me with reference to the purchase of the tug "Jumbo." I was advertising her for sale as trustee, and solely under the authority I had through a writing from Piaggio Bros. This is the paper:

"Pensacola, Fla., 1st March, 1884.

We hereby authorize and empower W. A. S. Wheeler to take possession of and to sell at public auction after fifteen day's notice in the Pensacola Commercial newspaper of the city, for cash, steam tug Jumbo, and to apply the proceeds of said sale in payment of debts due by Piaggio Brothers to R. L. Campbell and Mrs. Emily C. Smith; and we hereby authorize said Wheeler to execute any writing under seal or otherwise which may be necessary to give effect to the power hereby vested in him. Witness our hands and seals the day and year above written.

R. Piaggio (seal),
Dario Piaggio (seal)."

I had no other power, authority or connection with the matter. I do not remember stating to Mr. Elias that there was no lien on the boat. I did not tell him that the only claim against the boat was that of the First

National Bank. The bank had no claim at all, and had nothing to do with the matter. I had no knowledge of the existence of the lien of W. F. & J. E. Creary until after ·the date of the service of the writ of garnishment on me in the suit against Piaggio Bros. How I first learned the fact that there was such a lien I do not remember. I retained out of the proceeds of the sale of the Jumbo two hundred and fifty dollars to meet the garnishment, and held it until the garnishment was dismissed. I am prepared to swear that I did not tell William Elias that there were no liens on the Jumbo. I do say that I did not know of the existence of said lien until after the writ of garnishment was served on me. On cross-examination the following paper was handed to the defendant witness by the plaintiff's counsel:

Account sales Steamer Jumbo and Lighters, account of R. L. Campbell's mortgage against Piaggio Bros.

BY SALE.

Steam tug Jumbo to Elias.................. $3,250.00
Lighter Florida to Brent................... 600.00
Lighter Genoa to Wittich.................. 525.00
Lighter Tycoon to Elias................... 150.00
Lighter Minnie H. to Brent................ 750.00

$5,575.00

CHARGES.

Jos. Sierra, auctioneer, on $1,575 at
  5 per cent.................... $78.75
Pensacola Commercial, advertis-
  ing ........................... 8.00
Commissions 5 per cent.......... 278.75
1 month's interest on $750 note for
  Minnie H, dated February 28,
  1884 ....................... 7.00

| | | |
|---|---|---|
| Amount reserved awaiting result of suit against Jumbo, W. F. & J. E. Creary, for repairs.......... | 246.02 | |
| | | $619.02 |
| Proceeds....................... | | $4,955.98 |

W. A. S. WHEELER.

1884

| | | | |
|---|---|---|---|
| March 31 | Note Piaggio Bros. dated Dec. 1, 1882... | $3,100.00 | |
| | 4 M. B. 10 per cent. interest from maturity, April 4 to April 20, 1883............... | 13.76 | |
| | | | $3,113.76 |
| | Less amount paid April 20, 1883............ | | 1,117.22 |
| | | | $1,996.54 |
| | Interest from April 20, 1883, to March 31, 1884............... | | 191.90 |
| | | | $2,188.44 |
| | Note dated April 20, 1883, 6 months after date, due Oct. 23 1883 | 3,150.00 | |
| | Interest from maturity to March 31, 1884... | 140.00 | 3,290.00 |
| | | | $5,478.44 |

The defendant testified in reference to this paper that he presumed that it is the account rendered by him to Piaggio Bros. of his action as trustee, and the disbursement he had made. I recognize the signature to it as my signature. Yes, it is the account rendered.

This statement was made at the date it bears. On re-direct examination he said that after his attention had been called to the dates upon the paper and to the writ of garnishment, this paper has no date at the bottom where statements are usually dated. The date was omitted through an oversight, I presume. I am sure that it was not rendered until after the service of the writ of garnishment on me.

R. L. Campbell for the defendant testified as follows: I know that Mr. Wheeler's connection with the Jumbo was solely through the paper he has produced as his authority. I gave him such instructions as he received. I did not tell him that there was any lien on the Jumbo. I knew of the existence of none. Did not know of it until after the service of the writ of garnishment on Wheeler. He rendered us an account in the matter which showed that he held $250 under the garnishment of W. F. & J. E. Creary. This account was not rendered until after the service of the writ of garnishment which had been previously brought to my attention. Of this I am sure. How I can be sure, I can only explain by stating that I recollect it as a matter of memory only. This comprises the entire evidence.

The court then gave the following instructions to the jury: "(1) You are the judges of the weight of the evidence and the credibility of the witnesses. In determining the latter you may take into consideration their interest in the suit and their manner upon the stand. If you believe that Wheeler, although agent or trustee, made the representation alleged in the declaration, and that he made it to induce the alleged purchase, and the representation was not true, and the purchase was made upon the representation, his principal would not be bound but he would be. (2) If

you find that Wheeler, for the purpose of obtaining a higher price, represented to Elias that there was no lien on the boat, and the representation was of a character to impress Elias with the fact that there was no lien, and the representation afterwards turned out false, Wheeler would be responsible. (3) Written declarations made at, before or soon after a transaction are entitled to greater weight than an oral statement, unless the oral statement is of such character as to show that the written statement was made through mistake."

The following instructions requested by the defendant were refused by the court: "(1) To authorize the jury to find a verdict against the defendant upon the charge that he falsely represented at the time of negotiating the sale of the steamer Jumbo to the plaintiff or his agent that there existed no claim or lien against or upon the said steamer other than that which defendant was about to sell her to satisfy, it must be proved to the satisfaction of the jury, first, that there was such claim or lien at the time of said negotiation; second, that defendant did, at the time of the negotiation, represent to the plaintiff or his agent Elias that there was no such claim or lien; third, that at the time defendant made such representation he knew it to be false, and in the absence of satisfactory proof on, any one of these points the jury must find for the defendant upon the count in the declaration charging him with such false representation. (2) That the defendant in becoming trustee under the deed of trust, which is in evidence, had no legal duty to perform under said deed except to take possession of and sell the mortgage property and pay the proceeds over to R. L. Campbell to the extent of his mortgage debt, and the residue, after paying expenses, to the Piaggios; and

though the writ of garnishment in the case of Creary against Piaggio, which is in evidence, might have bound the funds in defendant's hands while it was in force, yet when the garnishment proceeding was dismissed defendant's legal duty was to pay over the money to his principal, and, therefore, plaintiff in this case can base no right to a verdict upon said garnishment suit or anything done therein before said dismissal. (3) In order to enable the jury to find a verdict against the defendant Wheeler they must be satisfied that the testimony before them proves that at the time of the negotiations between said Wheeler and Elias, the agent of plaintiff, for the sale of the steamboat, that said Wheeler had knowledge of the existence of the Creary claim upon the steamer Jumbo, and with that knowledge, and with the intention to cheat and defraud the plaintiff, represented to the plaintiff's said agent that no such lien or claim of a like kind existed at the time of such negotiation. (4) Proof that such a lien existed at the time of the negotiations for the sale, and even that defendant represented that there was no such claim, does not make out the plaintiff's case, unless it is further proved that the defendant Wheeler knew, when he made the representation, that such a claim existed. (6) In order for any warranty or representation made by Wheeler to Baars to avail Baars you must find that Baars had knowledge of the warranty or representation, for such warranty or representation made to Elias and not communicated to or acted upon by Baars would not avail him in this suit unless you find from the evidence that Elias was authorized to and did consummate the purchase without further communication with Baars after his interview with Wheeler. (7) The warranty, if you find one was made to Elias, must have been communi-

cated to Baars before the sale to him in order to avail him in this suit, unless Elias was authorized to and did consummate the purchase upon such assurance by Wheeler without further authority from Baars. If Elias was not aathorized to purchase and did not communicate the warranty to Baars before the sale, you will find for the defendant."

The following instruction, numbered fifth, requested for defendant was given by the court: "If you find from the evidence that Wheeler stated to Elias, acting for Baars, that there was no lien or claim against the Jumbo other than that he named at the time, and that in so doing he gave his reason for the statement, that reason is to be taken as a part of the statement or representation, and was notice to Elias that the representation or statement was to be limited by the reason given."

Upon the rendition of the verdict against the defendant he moved for a new trial, the grounds thereof being that the verdict was contrary to the evidence, and against its weight and preponderance, and contrary to the charge of the court; and that the court erred in refusing the instructions requested by defendant and quoted above; and because the court erred in giving the first, second and third instructions quoted above as having been given. The refusal of the motion for new trial, and the refusal of the instructions requested by defendant, and the giving of the first, second and third instructions are the errors assigned.

The charges refused by the court on the defendant's request, that embody the idea that the representation alleged to have been falsely made must have been known to be false at the time it was made by the defendant in order to warrant a recovery, makes it necessary to consider the rules of law applicable to actions

of this kind. The action is clearly one for deceit. The elements essential to a recovery in such cases are thus tersely formulated in 1 Bigelow on Fraud, p. 466: "A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance." As to the *scienter*—the knowledge—by the maker of the representation of its falsity, the same author (vol. 1, p. 509) says: "A false representation made with knowledge of its falsity—made *scienter*, in technical phrase—affords, if other elements of liability are present, a right of action in damages. A false representation may be made *scienter*, in contemplation of law, in any of the following ways: (1) with actual knowledge of its falsity, (2) without knowledge either of its truth or falsity, or (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity. No action for *damages* can be maintained without proof of the *scienter* in one of these three phases." If the first phase of the *scienter* is relied upon for a recovery the plaintiff must show that the representation was made with actual knowledge of its falsity, unless it be a case where the defendant, in making the representation that was false, couches it in such positive and unqualified terms as to amount to an affirmation of his knowledge of its truth. The second phase of the *scienter* includes all those cases where the misleading and false statement has been made in such absolute, unqualified and positive terms as implies *knowledge* on the part of the person making it, and if the party making such positive statement has *no knowledge* whether it is true or false he has *know-*

*ingly* told what is untrue, in putting his statement in such form as to amount to an assertion that he *has knowledge* of its truth, when in fact he has not.. When one party seeks information of another upon a material matter upon which he is about to act and the party from whom the information is sought is ignorant and has no information on the subject, the demands of truth would require him to disclose and affirm such ignorance; but, in such case, if he conceals or withholds his ignorance and positively asserts thus or so to be true, when in fact he knows not whether it be true or false, he is as culpable a deceiver, if his statement proves to be false, as the party who wilfully asserts that to be true that he absolutely knows to be false. The third phase of the *scienter* embraces those cases. where, from the party's special situation or means of knowledge, it becomes his *duty* to know as to the truth or falsity of the representation made; and in cases of this kind the plaintiff can generally satisfy the rule in regard to proof of the *scienter* by showing that the situation of the defendant was such as to possess him with special means of knowledge as to the truth or falsity of his assertions. Evans vs. Edmonds, 13 C. B., 777; Lynch vs. Mercantile Trust Co., 18 Fed. Rep., 486; Litchfield vs. Hutchinson, 117 Mass., 195; Bristol vs. Braidwood, 28 Mich., 191; Arkwright vs. Newbold, L. R., 17 Ch. Div., 301; Dunn vs. White, 63 Mo., 181; Marsh vs. Falker, 40 N. Y., 562. From what has been said, and under the proofs in this case, we do not think that the charges requested by the defendant upon the question of the *scienter* were erroneously refused. As an abstract, broad, general proposition of law it is quite true that no recovery can be had in an action of this kind unless the maker of the representation knew it to be false when made, and, that he

made it with intention to deceive; but the proof of such knowledge, or *scienter* is sufficient if it establishes a case falling within either of the three phases already pointed out, and the *intent to deceive* is to be inferred from the facts in proof. 1 Bigelow on Fraud, p. 537. It was not enough, therefore, for the court, under the proofs here, to simply say to the jury, in the language of the refused instructions, "that the plaintiff could not recover in the absence of satisfactory proof that the defendant made the representation knowing it to be false." Had these charges proceeded further after the announcement of the general proposition that *scienter* must be shown, with an explanation of the rules touching the three phases of proof that the law deems sufficient to establish such *scienter*, then it would have been proper to have given them; but in the form presented they are too general, and calculated to mislead.

It is contended further for the appellant that the judgment should be reversed because the proofs show that the lien, whose existence produced the plaintiff's damage, was a matter of record and that it was the plaintiff's duty to search those records for himself, the access thereto being easy, and that he had no right to rely upon the defendant's representations contrary to the facts that would have been disclosed by such record. There are some authorities that sustain this view of the law, but we are satisfied that the great weight of the authorities, English and American, supported by the soundest reasoning, establish a contrary doctrine that is thus forcefully expressed by Zollars, C. J., in West vs. Wright, 98 Ind., 335: "There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have

made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you, 'it is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told the truth; and because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without remedy.' " McClellan vs. Scott, 24 Wis., 81; David vs. Park, 103 Mass., 501; Upshaw vs. Debow, 7 Bush (Ky.), 442; Linington vs. Strong, 107 Ill., 295; Reynell vs. Sprye, 1 DeG., M. & G. 660; Olson vs. Orton, 28 Minn., 36; Parham vs. Randolph, 4 How. (Miss.), 435. As there must be a reversal of the judgment appealed from because of another error in the charge of the court presently to be noticed, we do not think it necessary further to discuss the main points presented by the instructions given or refused, since, from what has been said, any defects or omissions therein can, upon another trial, be rectified.

The proposition contained in the first charge of the court to the effect that "a principal is not liable civilly for the frauds and deceits of his agent committed in the course of his employment," was clearly erroneous. It is well settled that for deceit and false representations made by an agent in the course of his employment, both the agent and his principal are civilly liable; and, so far as the liability of the principal is concerned, it makes no difference whether he authorized or was cognizant of the misrepresentation and deceit of his agent or not. 1 Lawson's Rights,

Rem. & Prac., Sections 112, 114, and authorities cited.

The third charge of the court to the jury, as follows: "Written declarations made at, before or soon after a transaction are entitled to greater weight than an oral statement unless the oral statement is of such character as to show that the written statement was made through mistake," in view of the evidence in the cause, was fatally erroneous. The written statement or account of the sales made by the defendant and introduced in evidence contained an item of $246.02, stated to have been reserved to await result of suit of W. F. & J. E. Creary for repairs. It also contained three dates that indicate that the items and assertions of fact therein were in existence and were known to the defendant on March 31st, 1884, several days prior to the issuance and service of the writ of garnishment on him in the suit of W. F. & J. E. Creary against Piaggio Bros., all of which tended to show that the defendant did have knowledge, *prior to the service of such writ of garnishment on him*, that there was a claim against the boat he was selling, in favor of W. F. & J. E. Creary. The defendant, however, and R. L. Campbell both testified *orally*, but *positively*, that the appearances, from the paper itself, to the effect that it was made out on March 31st, 1884, were incorrect, and that such written statement was not in fact made out until *after* the service of the writ of garnishment, and that defendant *did not* know of the existence of the Creary claim until the writ of garnishment was served on him. Here, then, was oral statement set up in juxtaposition with written, upon a vital point in the case; it was error for the court to invade the exclusive right of the jury to determine how much and what comparative *weight* they were to give to the

different kinds of evidence in the cause by telling them, in effect, as matter of law, that the written statement was entitled to more weight than the oral. Williams vs. Dickenson, 28 Fla., 90, 9 South. Rep., 847; Williams vs. LaPenotiere, 32 Fla., 491, 14 South. Rep., 157, and cases cited. For this error in the charge of the court the judgment appealed from must be reversed and a new trial awarded, and it is so ordered.