**BOBBY JONES GARDEN APART-
MENTS, INC., Appellant,**

v.

**F. R. SULESKI, Appellee.**

**No. 24402.**

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1968.

---

15. 151 F.2d 994 (7 Cir. 1945).

Henry P. Trawick, Jr., Millican & Trawick, Sarasota, Fla., for appellant.

Vernon W. Evans, Jr., Thomas C. MacDonald, Jr., Tampa, Fla., Shackleford,

Farrior, Stallings & Evans, Tampa, Fla., of counsel, for appellee.

Before BROWN, Chief Judge, and COLEMAN and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Although the new wrinkle, Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F. 2d 696, 1963 AMC 355, is that it sneaks in the back way on removal, this Court is once more confronted with the highly precarious action of dismissal of a complaint on the bare bones pleadings for failure to state a claim upon which relief could be granted. Without expressing any opinion whatsoever on its ultimate provability as a Florida claim, we hold here only that this case, like so many already, is now added to the casualty list to worsen the mortality rate. Cf. Barber v. Motor Vessel "Blue Cat," 5 Cir., 1967, 372 F.2d 626, and cases cited at 627 n. 1. For to the usual looseness must be added the further factor that in testing fraudulent joinder it is enough to show a good faith expectation, not a legal certainty, that the attacked claim is good under state law. We reverse.

Plaintiff sued Whirlpool, the Manufacturer,[1] and its Agent Suleski[2] in the Florida State Courts. The Manufacturer removed the case to the Federal Court on the ground that the Agent was joined as a party for the fraudulent purpose of defeating removal. No motion to remand was filed, nor did the Court on its own raise the question of removability—in reality the Court's jurisdiction. But the Agent filed and the Trial Court granted a motion to dismiss for failure to state a claim. F.R.Civ.P. 12(b). This was done, and is here defended, on the Florida merits, or more accurately the lack of them. After a like fate to the amended complaint which eliminated any possible formal defects to a good claim and the plaintiff declining to amend further, the District Court dismissed the claim against the Agent.

The plaintiff appeals from this dismissal which is both 'final" for appeal[3] and res judicata in any future suit in the Florida Courts. The parties by brief continued to wage battle on the Florida merits with scarcely a deferential genuflection toward the spectre of removability. Not so the Court. For to this Court, calling for supplemental briefs, Florida substantive liability, although a significant issue, is tangential to removability and hence jurisdiction.

It rounds out this prologue to point up this little irony. On Manufacturer's thesis of removability, at the hands of a Court which acquired jurisdiction over him because he ought never to have been in the case at all so that had he not formally been a party, the corporate nonresident could have removed on simple diversity, the Agent is adjudged finally to have no liability. Federal jurisdiction rests on the fiction that the resident defendant is not really a party, not really "present," yet the Court below adjudicated finally the rights of the one not 'there."[4]

---

1. Whirlpool Corporation, an Illinois corporation with Illinois residence. Whirlpool is not a party to this appeal. But it is not disinterested nor are its interests either neglected, unasserted, or unrevealed. For Agent Suleski's able counsel have with propriety and vigor appeared expressly for both. Their success so far in this advocacy speaks for itself: A 100% victory for the Agent and their chosen forum for the case against the Manufacturer.

2. A citizen and resident of Florida.

3. The Judge certified the judgment as "final." F.R.Civ.P. 54(b).

4. It only gets more incongruous when Manufacturer, arguing with some plausibility that removability must be tested by the Federal Court on the pleadings as filed in the State Court, asserts that when the Federal Court impliedly adopts the theory of non-liability of the local defendant to continue its jurisdiction over the nonresident defendant, such court is powerless to allow amendment to the claim against the local defendant. Probably the only

The complaint charged both defendants—Manufacturer and Agent—with making misrepresentations about the heating ability of air heating-conditioning units sold to plaintiff for installation in a multi-unit apartment construction project, and with being negligent in making the representations. In considerable factual detail it set out the transaction. Plaintiff, then constructing the apartment project, made a written contract (attached) with Manufacturer for the air units. After examination of the building plans, both Manufacturer and Agent represented by the attached writings that the units would adequately heat the apartments.[5] The plaintiff relied on the representations as Manufacturer and Agent, experts in the field, knew it would. But the units did not heat.[6] As a result plaintif sustained damages

($450,000.00) for removal, renewal costs plus consequential loss of tenants, revenues and ability to amortize the mortgage. By Count II it was specifically alleged that "defendants were negligent in making recommendations to plaintiff to use said air conditioning units."

■■ Unlike the parties who joust for victory on who wins or loses our sole concern is: Who tries the case? State or Federal Court? For to us we cannot escape the problem of removability. The Agent-appellee makes the initial contention that plaintiff cannot contest the jurisdiction of the Federal Court since it failed to contest the petition for removal and has never moved to have the cause remanded. The result of plaintiff's inaction, says the Agent, is to admit all the allegations in the Manufacturer's petition for removal.[7] As a general rule this

---

time, the only place, the only situation in which a plaintiff gets a single shot at a sitting duck defendant, such a declaration this late in the twentieth century would surely make the skeletons rattle. *O'Neal v. United States*, 5 Cir., 1959, 264 F.2d 809, 812, 814 (dissenting opinion), vacated, 272 F.2d 412, aff'd on the merits, 1960, 273 F.2d 549; *United States v. Stephen Brothers Line*, 5 Cir., 1967, 384 F.2d 118, 125.

5. The complaint alleged:
   "3. Before entering into said contract, defendants examined plaintiff's plans for the apartment units to be constructed and represented to plaintiff that said air conditioning units would adequately and efficiently heat said apartments when constructed, copies of said representations being attached.
   Annexed exhibits showed:
   The letter-contract concluded:
   "As part of this contract, your firm will furnish us a letter from your Engineering Department stating that the air conditioning units above mentioned will cool and heat our typical apartments."
   The subsequent engineering report was transmitted by Agent's letter which stated:
   "In a nutshell, the units will do the job except for the end apartments on each floor, where there might be a problem. I think his suggestion for a wall-type electric heater installed in the hallway is your solution."

The Manufacturer's report, first stating that the writer had "reviewed the typical floor plan" (and blue prints), discussed cooling capabilities with possible reservations as to two specified second floor apartments ("B" and "C") concluded as to heating capabilities:
   "On the heating load the only problem is again with the two bedroom apartments on the end of the building. These apartments have a great deal of glass area and this is the reason for their high cooling and heating load. The only suggestion I can make in this regard is to install a small wall-type electric heater in addition to the unit. This could be mounted in the hall and would only be used when the weather approached the freezing point which does not happen too often in the Tampa area.
   "I am returning the blueprint you forwarded with each apartment marked with the designation above mentioned. I hope this will help you in connection with the sale."

6. At this stage we must read the complaint to charge that all units failed, not just those for second floor apartments "B" and "C" which were perhaps excepted specifically (see note 5 supra).

7. Agent does not, of course, in any way contend that plaintiff, through action, inaction, or waiver, could give the federal courts jurisdiction of the case when it did not originally exist. American Fire &

is true when the allegations concern questions of fact, O'Campo v. Hardisty, 9 Cir., 1959, 262 F.2d 621, but Manufacturer's petition asserts only that as a matter of law plaintiff has not stated a cause of action against Agent which makes the joinder fraudulent. That legal contention is controverted, plaintiff says, not by facts touching on motive for removal but by plaintiff's demonstration that the Florida law is different from what they think it to be. See Smith v. Southern Pac. Co., 9 Cir., 1951, 187 F.2d 397.[8] To this may be added the now considerable doubt whether under *Finn* (note 7 supra) the right to challenge removability is ever lost.

To the Court's expressed concern that *Finn* (note 7 supra) and its reading of "separate and independent claim" in section 1441(c) [9] could sustain removal, the parties quickly join in a disavowal. Manufacturer is first to acknowledge that removal rests on sections 1441(a) [10] and (b) [11] and the still viable Judge-imported concept of fraudulent joinder. Wilson v. Republic Iron & Steel Co., 1921, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144. We have held this to be unaffected by revisions of the 1948 Judicial Code.[12] Covington v. Indemnity Ins. Co., 5 Cir., 1958, 251 F.

2d 930; Bentley v. Halliburton Oil Well Cementing Co., 5 Cir., 1949, 174 F.2d 788.

We have stated the standard for determining this in Parks v. New York Times Co., 5 Cir., 1962, 308 F.2d 474, at 478:

"[T]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law * * *. One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming."

This is an *Erie* problem in part, but only part. In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is. Cf. United Services Life Ins. Co. v. Delaney, 5 Cir., 1962, 308 F.2d 484, rehear en banc, 1964, 328 F.2d 483, on receipt of answer to certification, 1966, 358 F.2d 714, cert. denied, 385 U.S. 846, 87 S.Ct. 39, 17 L. Ed.2d 77. But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts in-

---

Cas. Co. v. Finn, 1951, 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702, 710–711.

8. See also Bentley v. Halliburton Oil Well Cementing Co., 5 Cir., 1949, 174 F.2d 788, at 791:
"The doctrine of fraudulent joinder had its inception in the courts * * * to protect non-resident defendants from any misstatement of fact * * *."

9. 28 U.S.C.A. § 1441(c):
"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

10. 28 U.S.C.A. § 1441(a):
"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which

the district courts of the United States have original jurisdiction, may be removed by the * * * defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

11. 28 U.S.C.A. § 1441(b):
"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

12. We decline plaintiff's importunities to reconsider based on the term "properly joined" in § 1441(b). In any event under our practices this would require en banc. 28 U.S.C.A. § 46(c).

volved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law. Albi v. Street & Smith Pub., Inc., 9 Cir., 1944, 140 F.2d 310; Gillette v. Koss Const. Co., W.D.Mo., 1957, 149 F. Supp. 353; Richardson v. Southern Idaho Water Power Co., 9 Cir., 1913, 209 F. 949.[13]

■ Thus we get to the question: Is there a reasonably good chance that Florida today will hold the Agent to some liability? In answering it, we assume without deciding that we must look to the original state court pleading,[14] not the amended complaint filed after removal. We may readily do this if we read it through the Federal, not Florida, lenses. Barber v. Motor Vessel "Blue Cat," 5 Cir., 1967, 372 F.2d 626, of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80:

> "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Id. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.[15] This is especially true since the *Erie* lights, of significant, but not decisive, importance are, for a change, rather bright.[16]

■■ The Florida law of actionable misrepresentation was recently capsulated into the following elements in Kutner v. Kalish, Fla.Dist.Ct.App., 1965, 173 So.2d 763, 765:

> "(1)  a misrepresentation of material fact.
>
> (2)  [a] knowledge of the representor of the misrepresentation, or, [b] representations made by the representator without knowledge as to either truth or falsity, or, [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof,
>
> (3)  an intention that the representation induce another to act on it, and
>
> (4)  resulting injury to the party acting in justifiable reliance on the representation."

See Joiner v. McCullers, 1947, 158 Fla. 562, 28 So.2d 823; Watson v. Jones, 1899, 41 Fla. 241, 25 So. 678; Wheeler v. Baars, 1894, 33 Fla. 696, 15 So. 584. We have set out the Florida elements of fraud in full above because its law is different from most jurisdictions in that the representor does not have to have knowledge of the falsity of his statement to be held liable.[17] Instead, negligent misstatement is enough. See Watson v. Jones, 1899, 41 Fla. 241, 25 So. 678,

---

13. Moore, Commentary on the U.S. Judicial Code, § 0.03 points out that to the failure to state a cause of action there is a dual requirement that such failure is obvious according to the settled rules of the state." The same test is stated in Moore's Federal Practice ¶ 0.161[2], at 532 (1965).

14. Pullman Co. v. Jenkins, 1939, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334; 1 Barron & Holtzoff, Federal Practice & Procedure § 109, at 542 n. 47.3 (Wright ed. 1960); Wright, Federal Courts § 38, at 114 (1963).

15. See also, e. g., City of Fort Lauderdale v. East Coast Asphalt Corp., 5 Cir., 1964, 329 F.2d 871, cert. denied sub nom. R. H. Wright, Inc. v. City of Fort Lauderdale, 379 U.S. 900, 85 S.Ct. 187, 13 L.Ed.

2d 175; Seeley v. Brotherhood of Painters, Decorators, and Paper Hangers of America, 5 Cir., 1962, 308 F.2d 52.

16. Cf. Travelers Indemnity Co. v. Holman, 5 Cir., 1964, 330 F.2d 142, 144.

17. The general rule is stated in 23 Am. Jur. § 20, at 773:
"The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."

where the Court said that "when it is shown that the statement was material and false, and that the defendant's situation or means of knowledge were such as to make it incumbent upon him as a matter of duty to know whether the statement was true or false, the conclusion is almost irresistible that he did know that which his duty required him to know." Id. at 254, 25 So. at 682. Of course we realize, as do the Florida Courts, that this formula—negligence equals knowledge—is a fiction. But fictions can be useful to plug up holes in legal theory. Thus to provide a remedy where the rigidity of the fraud action failed, Forida has held a representer liable for negligence. Cf. Derry v. Peek, 1889, 14 App.Cas. 337; see generally Prosser, Torts § 102 (3d ed. 1964).

Comparing the Florida requisites of a fraud action with the *Conley* reading of plaintiff's complaint, we are satisfied that a reasonable possibility exists that plaintiff could persuade Florida Courts that he has a cause of action against the Agent.[18]

Nor will this Florida result be different because Agent was an agent for a disclosed principal. That such an agent may be liable personally in an action for fraud has been well-settled in Florida since Wheeler v. Baars, 1894, 33 Fla. 696, 15 So. 584, where the Court said that "for deceit and false representations made by an agent in the course of his employment *both the agent and his principal are civilly liable * * *.*" (Emphasis added.) Id. at 713, 15 So. at 589.[19] We detect no movement in Florida away from *Wheeler,*[20] and we ascertain nothing to make us doubt that Agent was indeed moving within his sphere of authority.[21]

In the unique role this removal question assigns to us it is more than ordi-

18. F.R.Civ.P. 9(b), requiring that "all averments of fraud * * * shall be stated with particularity," is no stumbling block. Defendants stated: The air units would heat. They did not heat. How much more specific can one get?

19. See also Watson v. Jones, 1899, 41 Fla. 241, 25 So. 678. In that case defendant was an agent and plaintiff sued him for misstatements about liens on property defendant sold to plaintiff which defendant knew or should have known were present. The Court held the agent liable.
    There is nothing unusual about this doctrine, for it apparently is the general rule across the United States. See 3 C.J.S. Agency § 221(b), at 132: "Even though an agent is duly authorized and his principal disclosed, if he is guilty of a fraudulent act or misrepresentation, he is liable therefor * * *." See also Restatement (Second) of Agency § 347 (1958): "An agent who fraudulently makes representations * * * is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal."
    We do not think Croom v. Swann, 1847, 1 Fla. 211, is controlling on the issue of Agent's liability. In that case one Oliver, as agent of Croom, sold a horse to Shaw and warranted it sound. The horse proved to be unsound, and Shaw sued Oliver's administrator, Swann, and collected a judgment. Swann, as administrator of Oliver's estate, then brought suit against Croom, the principal, for indemnification. The issue on appeal was whether the record in Shaw v. Swann (which evidently was not appealed) could be introduced in the suit for indemnification. Thus anything said in *Croom* about an agent's liability would be dicta. Whether that dicta, even supposing that it forecasts non-liability for an agent, is still valid in light of the clear expressions of Florida law in later cases is a question we need not decide, but may merely say that it is not clear that as a matter of law that Agent is not liable in the present suit. See Parks v. New York Times Co., supra.

20. Unlike Home Ins. Co. v. Riddell, 5 Cir., 1958, 252 F.2d 1, the *Erie* signposts along the road to decision need not be read with great care because there are no subsequent developments in the law.

21. Agent cites Smith v. Platt Motors, Inc., Fla.Dist.Ct.App., 1962, 137 So.2d 239, as being dispositive of his liability. Perhaps, as urged, Florida perceives a difference in liability depending on whether warranties made by an agent are implied or express. But since *Platt* dealt with implied warranties of fitness, it is not in point here.

narily appropriate to emphasize certain things. Whether plaintiff can make out a case we do not know. Whether he can do so is a matter for the Florida Courts to decide on the evidence brought forward and in the light of legal theories Florida is free to embrace. There may be deficiencies in the proof on affirmative defenses.[22] And not for the first time,[23] the Florida Courts may disagree with either our declaration or prediction of Florida law.

Thus requiring remand the case ends as it began: A Florida suit involving Florida law to be determined by a Florida Court.

Reversed.

22. E. g., defendant's contention that the statements were only those of opinion. Cf. Manheim v. Ford Motor Co., Fla., 1967, 201 So.2d 440. See also the contention that the representations could not possibly have been relied upon by plaintiff since the written representations were dated after the signing of the contract of sale. It is enough now to point out that this contention ignores the fact that the contract itself requires written representations that the heating units will do the job.

23. The score, tabulated in United Services Life Ins. Co. v. Delaney, 5 Cir., 328 F.2d 483, 485, n. 7, 8, hardly improves with time. See W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1967, 388 F.2d 257 [on petition for reh., 388 F.2d 262 (dissenting opinion)] [1968, 388 F.2d at 265, n. 15 and related text.]