JACKSON MIZELL AND WILLIAM MIZELL, PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF J. MIZELL & BROTHER, *Plaintiffs in Error*, v. JOHN J. UPCHURCH, *Defendant in Error*.

| 46 | 443 |
| s50 | 458 |
| f50 | 471 |

DECEIT AND MISREPRESENTATION AS TO CREDIT DUE ANOTHER—WHEN RECOVERY FOR CAN BE HAD.

To maintain an action on the case for deceit, the plaintiff must allege, with reasonable certainty, and be prepared to prove (1) that the defendant made some representation to the plaintiff, meaning that he should act upon it; (2) that such representation was false, and that the defendant, when he made it, knew it to be false; and (3) that the plaintiff, believing such representation to be true, acted upon it, and was thereby injured.

This case was decided by Division A.

Writ of error to the Circuit Court for Duval county.

### Statement.

The plaintiffs in error sued the defendant in error in the Circuit Court of Duval county in tort for damages for deceit and misrepresentation as to the financial responsibility of one B. H. Powell, the declaration as amended being as follows:

"STATE OF FLORIDA,
Duval County.

Jackson Mizell and William Mizell, partners doing business under the firm name and style of J. Mizell & Brother, by D. U. Fletcher and H. B. Philips, their attorneys, filing this their amended declaration by leave of

court first had and obtained, sue John J. Upchurch, defendant, for that, whereas, the plaintiffs being engaged in the lumber and milling business at Kings Ferry, Florida, at the time of the writing the letter hereinafter set forth, knew the firm of Dyal & Upchurch, composed of one Bert G. Dyal and the defendant, doing business at Fort Moniac, Georgia, and held said firm of Dyal & Upchurch in high esteem for care and prudence in business matters and relations, and the defendant knowing the esteem and regard which plaintiffs held said firm of Dyal & Upchurch, and well knowing that plaintiffs would rely upon representations made to them by said firm of Dyal & Upchurch as to the business responsibility and integrity of persons desiring to deal with and purchase property from plaintiffs, and well knowing that plaintiffs had for sale and desired to sell certain mules and harness, to induce the plaintiffs to believe that one B. H. Powell was a man of integrity and fair business dealing, and one who could be safely dealt with and trusted in the usual course of business, on, to-wit: February 11th, 1898 (under the name of said firm of Dyal & Upchurch), wrote and addressed to plaintiffs and delivered to said B. H. Powell for the purpose and with the intention that the same should be by him delivered to the plaintiff, a certain letter, in the words and figures following, to-wit:

'FORT MONIAC, Feby. 11th, 1898.

*Messrs. J. Mizell & Bro.,*

*Kings Ferry, Fla.*

DEAR SIR:—This will introduce to you Mr. B. H. Powell, who wants to buy some mules. Mr. Powell is alright, and any favors you can show him will be appreciated by us.

Yours truly,

DYAL & UPCHURCH.'

And plaintiffs aver that the said letter was delivered to them by said B. H. Powell, and thereupon believing the representations therein to be true, and being induced by said representations therein to believe that said B. H. Powell was a man of integrity and fair business dealing and one

who could be safely trusted and dealt with in the usual course of business, the plaintiffs by reason of the said representations and the said belief in their minds, induced as aforesaid, forebore to make inquiries or investigation as to the character and financial business standing of said B. H. Powell, and plaintiffs by said representations and the said belief in their minds thereby created as aforesaid, were induced to sell and did sell to said B. H. Powell certain personal property, to-wit: eight mules and harness therefor, of the value of $852.00, and according to the usual course and custom of business extended the said B. H. Powell credit for the same, upon his request and on the strength of said letter, being the sum of eight hundred and fifty-two dollars, upon the terms of sixty days, upon and for one-half of said amount, and for the term of four months upon and for the remainder or balance thereof, from the 12th day of February, 1898.

And plaintiffs aver that said B. H. Powell was not at the time of writing said letter a man of integrity and fair business dealing and one who could be safely dealt with and trusted in the usual course of business; but, on the contrary, was wholly insolvent and a man utterly without good faith and the principles of fair dealing in business matters and transactions, and utterly unworthy of any trust or credit according to the usual course and custom of business, of all which plaintiffs were ignorant; and said defendant did not know the character and circumstances and standing of said Powell and had no reason to believe that he knew thereof and negligently wrote said letter in reckless and negligent disregard of plaintiffs' safety and interests. And plaintiffs in fact say that for the purchase price of the chattels sold to said B. H. Powell as aforesaid, they took from said Powell, at his request and on the strength of said letter, his two promissory notes, one payable at sixty days, the other payable at four months; that said Powell at the time of the purchase of said chattels did not intend to pay for the same, but fraudulently obtained the same with the

design and intent to cheat and defraud plaintiffs; that said 60-day note falling due, payment thereof was demanded but the same was not paid, and shortly thereafter said Powell, fraudulently intending to cheat and defraud the plaintiffs made way with said chattels and disposed of and placed the same beyond the reach of plaintiffs; and the plaintiffs have not been paid for the said property, and are unable to obtain payment therefor of and from said B. H. Powell; and therefore plaintiffs bring this their suit, and claim seventeen hundred dollars damages.

And plaintiffs also sue the defendant for that, whereas, the plaintiffs, being engaged in the lumber and milling business at Kings Ferry, Florida, at the time of writing the letter hereinafter set forth, knew the firm of Dyal & Upchurch, composed of Bert G. Dyal and the defendant, doing business at Fort Moniac, Georgia, and held said firm of Dyal & Upchurch in high esteem for care and prudence in business matters and relations, and the defendant knowing the esteem and regard in which plaintiffs held said firm of Dyal & Upchurch, and well knowing that plaintiffs would rely upon representations made to them by said firm of Dyal & Upchurch as to the business responsibility and integrity of persons desiring to deal and purchase property from plaintiffs, and well knowing that plaintiffs had for sale and desired to sell certain mules and harness, to induce plaintiffs to believe that one B. H. Powell was a man of integrity and fair business dealing, and one who could be safely dealt with and trusted in the usual course of business, on, to-wit: February 11th, 1898, wrote (under the name of said firm of Dyal & Upchurch) and addressed to plaintiffs and delivered to said B. H. Powell for the purpose and with the intention that the same should be delivered to the plaintiffs, a certain letter in the words and figures following, to-wit:

'FORT MONIAC, Feby. 11th, 1898.
*Messrs. J. Mizell & Bro.,*
    *Kings Ferry, Fla.*
DEAR SIR :—This will introduce to you Mr. B. H. Pow-
ell, who wants to buy some mules. Mr. Powell is alright,
and any favors you can show him will be appreciated by us.
                Yours truly,
                        DYAL & UPCHURCH.'

And plaintiffs aver that said letter was delivered to
them by said B. H. Powell, and thereupon believing the
representations therein to be true, and being induced by said
representations therein to believe that said B. H. Powell
was a man of integrity and fair business dealing and one
who could be safely trusted and dealt with in the usual
course of business, the plaintiffs by reason of said repre-
sentations and the said belief in their minds, induced as
aforesaid, forebore to make inquiries or investigations as
to the character and financial and business standing of said
B. H. Powell, and plaintiffs by said representations and the
said belief in their minds thereby created as aforesaid were
induced to sell and did sell to said B. H. Powell certain
other personal property, to-wit: eight mules and harness
therefor of the value of $852.00, and according to the usual
course and custom of business extended the said B. H.
Powell credit for the same, at his request and on the
strength of said letter, being the sum of eight hundred and
fifty-two dollars, upon the term of sixty days upon and for
one-half of said amount, and for the term of four mounths
upon and for the remainder or balance thereof, from the
12th day of February, 1898.

And plaintiffs aver that said B. H. Powell was not at
the time of writing said letter a man of integrity and fair
business dealing and one who could be safely dealt with and
trusted in the usual course of business ; but, on the contrary,
was wholly insolvent and a man utterly without good faith
and the principles of fair dealing in business matters and
transactions, and utterly unworthy of any trust or credit,

all of which the defendant then well knew, and of which plaintiffs were ignorant.

And plaintiffs in fact say that for the purchase price of the chattels so sold to said B. H. Powell as aforesaid they took from him, said Powell, at his request and upon the strength of said letter, his two promissory notes, one payable sixty days, the other payable at four months; that at the time of the purchase of said chattels said Powell did not intend to pay for the same, but fraudulently obtained the same with the intent and purpose to cheat and defraud plaintiffs; that said sixty-day note falling due payment whereof was demanded, but the same was not paid, and shortly thereafter said Powell, fraudulently designing to cheat and defraud plaintiffs, made way with said chattels and disposed of and placed same beyond the reach of plaintiffs, and the plaintiffs have not been paid for said property, and are unable to obtain payment therefor of and from said B. H. Powell, and therefore plaintiffs bring this their suit and claim seventeen hundred dollars damages."

To this declaration the defendant interposed the following demurrer: "The defendant demurs to each of the counts of plaintiffs' second amended declaration filed herein September 28th, 1900, and for his several grounds of demurrer, applied to each of said counts, severally shows:

1.   Said count departs from the præcipe for summons and the summons, as amended herein, by which amendment, the action herein was converted from an action in assumpsit to one in tort.

2.   The allegations therein set up do not state in substance a cause of action against this defendant.

3.   Said count, if any basis exist for the recovery therein sought, proceeds upon a guaranty in writing of the solvency of said Powell, in alleged reliance upon which credit was extended to him.

4.   It is not made to appear in said count that the defendant knew when said letter was written that said Powell proposed or intended to buy mules or other property on a

credit; nor any issuable facts set up therein, construed in the light of which the said writing imports that said Powell sought or expected to buy mules on a credit from said plaintiffs.

5. It is not made to appear from said writing in and of itself, or from said writing and issuable facts set up in connection therewith that the entire scope and meaning of said writing was other than to bring together parties who had mules to sell and a party who wished to buy mules.

6. It is not averred that the writing therein set up purporting to be signed 'Dyal & Upchurch,' but alleged to have been in fact signed by this defendant, and upon the representation in which the plaintiffs aver they acted because of their esteem for 'Dyal & Upchurch' was not known, at the time they so acted upon it, to have been so in fact signed by this defendant, as an individual, and not otherwise than as an individual, and in the capacity in which he is now sued.

7. Said writing is alleged to have been addressed to the plaintiffs by this defendant, using the name of Dyal & Upchurch, whereby the plaintiffs were misled to sell certain personal property on a credit, and yet it is not averred that at the time the said letter was so acted on by them they were ignorant that said letter was so signed by this defendant so using the firm name of Dyal & Upchurch.

8. There is nothing in the writing therein set up, construed either in and of itself, or in the light of the issuable facts and circumstances set up in connection with said writing, upon which as matter of law the plaintiffs were, or could be, as alleged in said count, induced to believe that said B. H. Powell was a man of integrity and fair business dealings, and one who could be safely trusted and dealt with in the usual course of business; said writing has no reference, directly or indirectly, to the usual course of business, but solely to a single transaction, the purchase of mules, in respect of which nothing is said or contemplated as to a credit.

46 Fla.—16

9. There is nothing in said alleged writing, construed in and of itself, nor in said writing construed in the light of the issuable facts and circumstances therein set up in connection with said writing, upon which, as matter of law, plaintiffs were justified in reliance thereon, to forbear inquiries or investigations, as to the financial and business standing of said Powell, and to sell said property to said Powell on a credit, as set up in said count.

10. The alleged writing therein set up does not purport to be signed by this defendant, nor any one for him.

11. The signing of the alleged writing therein set up is not alleged to have been known to the plaintiffs at the time it was alleged to have been acted upon, as the handwriting of this defendant.

12. The alleged representations made in the writing, therein set up as the basis of this action, are not representations of facts open to observation and capable of being reproduced by an effort of memory.

13. It is not alleged that the representations therein set up *in haec verba* as the basis of this action, were made maliciously; nor is it alleged that this defendant was in anywise benefited or that he sought to be benefited by said alleged representations.

14. The alleged writing therein set up *in haec verba* does not in and of itself, nor in the light of issuable facts and circumstances therein set up, sustain the allegations based thereon, therein set up, that said Powell could be safely trusted and dealt with in the usual course of business.

15. It is not made to appear from the issuable averments of said count that defendants knew at the time said letter was written, that the plaintiffs were willing to sell on credit the property therein alleged to have been sold on credit.

16. It does not appear, with legal or other certainty that said plaintiffs, upon the postulate that they believed and acted upon the truth of the representations contained in said writing, were induced to sell and did sell on a credit

to said Powell the property therein alleged to have been sold, upon the terms and credit therein set up.

17. It does not appear from the allegations of said count that this defendant at or after said alleged sale was made was notified that plaintiffs had acted upon said alleged representations in writing, by selling said property on a credit on the faith thereof, and informed this defendant of the terms of sale and the credit so extended.

18. The alleged representations upon which it is averred the plaintiff acted as to his loss are not alleged to have been made by this defendant with the intent to deceive plaintiffs.

19. The allegations of the said counts as to defendant's knowledge, at the time the letter therein set up was written, of said Powell as a man of integrity and fair business dealings and one who could be safely dealt with and trusted, are not only inconsistent and irreconcilable, but wholly contradictory and repugnant."

This demurrer upon argument was sustained by the court, and, the plaintiffs declining to amend further, final judgment upon the demurrer was entered, and from this judgment the plaintiffs below have sued out this writ of error, and assign as error the ruling upon this demurrer.

*Duncan U. Fletcher* and *H. B. Phillips* for plaintiff in error.

*A. W. Cockrell & Son* for defendant in error.

TAYLOR, C. J. (*after stating the facts*).—The court below erred in sustaining the defendant's demurrer to the plaintiffs' amended declaration, quoted in the foregoing statement.

In the case of *Byard v. Holmes*, 34 N. J. L. 296, one of the leading American cases of the class under discussion, we find the following succinct statement of the law as to the pleading and proof to be made in such cases: "To

maintain an action on the case for deceit, the plaintiff must allege, with reasonable certainty, and be prepared to prove (1) that the defendant made some representation to the plaintiff, meaning that he should act upon it; (2) that such representation was false, and that the defendant, when he made it knew it to be false; and (3) that the plaintiff, believing such representation to be true, acted upon it, and was thereby injured." While the two counts in this declaration are unnecessarily prolix, yet we think that its allegations substantially comply with the requirements of the rule here announced. The following cases deal with the same subject generally, and with the defences proper to be made and with the various phases and effect of the proofs *pro* and *con*: *Sims v. Eiland,* 57 Miss. 607; *Viele v. Goss,* 49 Barb. (N. Y.) 96; *Meyer v. Amidon,* 23 Hun. 553; *Clopton v. Cozart,* 13 Smedes & M. (Miss.) 363; *Bean v. Wells,* 28 Barb. (N. Y.) 466; *Boyd's Ex. v. Browne,* 6 Pa. St. 310; *Nevada Bank of San Franscisco v. Portland Nat. Bank,* 59 Fed. Rep. 338; *Felix & Marston v. Shirey,* 60 Mo. App. 621; *Wheeler v. Baars,* 33 Fla. 696, 15 South. Rep. 584; *Watson v. Jones,* 41 Fla. 241, 25 South. Rep. 678.

We think that the allegations of the declaration made a case sufficient to be plead to, and the demurrer thereto should have been overruled. The judgment of the Circuit Court is reversed with directions to overrule the demurrer of the defendant to the plaintiffs' amended declaration, and for such further proceedings as may be consonant with law and the rules of practice. The costs of the appellate proceedings to be taxed against the defendant in error.