JOHN J. UPCHURCH, PLAINTIFF IN ERROR, v. JACKSON MIZELL AND WILLIAM MIZELL, PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF J. MIZELL & BROTHER, DEFENDANTS IN ERROR.

1. Where assignments of error are based on the introduction of evidence which was merely cumulative, and there was other competent evidence strongly tending to prove the fact, which was sought to be established, and there was no evidence to the contrary, and the verdict could not reasonably have been otherwise than it was, the assigned errors will be regarded as harmless.

2. Where a witness is asked as to his knowledge of the financial condition and integrity of a person during the year 1898, and the evidence was pertinent and proper as to such condition and integrity during a part of the year 1898, and there was no specific objection in the court below to such question, as being too broad, this court will not sustain the objection made here for the first time.

3. A remark of the trial judge upon an answer of a witness which was objected to, as follows. "I think he answered

it pretty well gentlemen," which remark was not objected to at the time, and no exception taken thereto, will not be considered here.

4. Where the record does not show any ruling of the trial court or any objection or exception to a ruling, this court cannot regard an assignment based on the alleged action of the court.

5. Where an objection by the plaintiff was sustained to a certain question put to the defendant by his attorney, but it appears from the record that he was subsequently permitted to substantially answer the question, the action of the trial court in sustaining the objection will not be regarded as reversible error.

6. The defendant Upchurch was asked by his attorney whether it would have been a reflection upon Dyal & Upchurch if he (one of the plaintiffs) had declined to sell the mules on a credit. This question was objected to by the plaintiffs, and the objection sustained by the court, which action is assigned as error. We discover no error in this ruling.

7. The construction of a written instrument is a question for the court and not for the jury.

8. Where the language of a declaration and of an instruction based thereon is not of a technical character and when understood in its ordinary meaning there is no conflict between them, and the meaning of the language of the instruction is within the meaning of the language of the declaration, such instruction is not erroneous on the ground of variance.

9. A person who buys goods upon a credit thereby impliedly if not expressly represents that he intends to pay for them If therefore he then has no such intention, and a fortiori if he has then a present intention not to pay for them, and conceals this fact from the seller, there is such a misrepresentation of a material fact as will entitle the seller to avoid the sale. This intention must be one existing at the time of the sale, and not merely one formed after the sale. It may be inferred from circumstances.

10. The principles of law established in Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, Watson v. Jones, 41 Fla. 241, 25 South. Rep. 678, and Mizell v. Upchurch, 46 Fla. 443, 35 South. Rep. 9, dealing with the doctrine of scienter in actions of deceit are reaffirmed.

11. It is not erroneous for the trial court to refuse to give an instruction which is inapplicable to the evidence.

This case was decided by Division B.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*A. W. Cockrell & Son,* for Plaintiff in Error.

*Duncan U. Fletcher* and *Jno. W. Dodge,* for Defendants in Error.

HOCKER, J. This is the second writ of error in this case. The decision of this court on the first consideration is reported in 46 Fla. 443, 35 South. Rep. pages 9 to 13 inclusive, which exhibits the two counts of the declaration, the demurrers thereto and the rulings thereon. After the reversal here the plea of not guilty was filed on the 30th of July, 1904, a trial was had in November, 1904, and a verdict and judgment rendered for the present defendants in error.

The first five assignments of error are predicated upon rulings of the court admitting in evidence copies certified by the sheriff who held the originals of five different executions on judgments in favor of five different judgment creditors against B. H. Powell which were offered in evidence by the plaintiffs.

These copies of executions were objected to by the defendants on following grounds: First, that said evidence is of itself incompetent for any purpose in this suit; second, that said evidence is not pertinent to any issue raised in this suit; third, that said evidence is not the best evidence of the said several matters sought to be introduced; fourth, that said evidence is not binding on the defendant in this suit and is, so far as this defendent is concerned, *"res inter alios acta."* We do not think it necessary to pass on these assignments. The only object in introducing the instruments was to show that B. H. Powell was insolvent when the letter set up in the declaration dated February 11th, 1898, and addressed to J. Mizell & Bro. was written and delivered. There was other evidence on the part of the plaintiffs, strongly tending to show that fact, and the fact of the insolvency of Powell was not controverted by the defendant. These instruments were therefore merely cumulative testimony and the verdict of the jury without them on this point should not have been otherwise than it was. The errors, if any, were harmless. Jacksonville, M. P. Ry. & Nav. Co. v. Warriner, 35 Fla. 197, text 208, 16 South. Rep. 898.

The sixth assignment is based on the ruling of the court permitting Edward Williams, a deputy sheriff, to be asked the following question, viz: "I would like to show you these certified copies of executions against B. H. Powell and you may say whether or not effort has been made to collect these executions by the sheriff." For the reasons stated in considering the foregoing assignments, we do not deem it necessary to pass on this assignment, as the evidence elicited was merely cumulative upon a proposition not disputed.

The *seventh* assignment is based on the ruling of the court permitting plaintiffs to ask their witness J. B.

Yerkes the following question, *viz*: "Did you know of his (referring to B. H. Powell) financial condition and his integrity as to his being entitled to trust and confidence as a business man in business transactions during the year 1898?" The witness had testified that he was manager of the Florida Hardware Company; that he had been in business between eighteen and nineteen years, on Bay street in Jacksonville, Florida; that he knew B. H. Powell; that the latter's postoffice address was Long Branch, Duval county; that he sold Powell goods covering a period of about two years, and then followed the question on which the assignment is based. The grounds of objection are, first, that it has no pertinency to the issues involved; second, it has not developed so far in the examination that the witness had a knowledge or opportunity to enquire about it sufficiently to authorize the witness to testify about it. The argument in the brief, to support this assignment is, that the inquiry should have been confined to a condition of things existing anterior to February 11th, 1898. Certainly the evidence was pertinent as to Powell's financial condition on and before February 11th, 1898, the date of the letter. This is admitted. But there was no specific objections to the question on the ground that it covered too much time, or was too broad. We do not think that the judge erred in overruling the objections. The established rule in this court is that objections to testimony must be specific (Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656), and that an objection to evidence as a whole, part of which is competent, is properly overruled. Anthony v. State, 44 Fla. 1, 32 South. Rep. 818.

The *eighth* assignment is based on the refusal of the trial judge to grant the motion of defendant to strike the

answer of plaintiffs' witness J. B. Yerkes in answer to the question, what was his (meaning Powell's) standing as a business man; was he entitled to credit or otherwise?" The answer was: "He was judgment proof, bankrupt and insolvent." The ruling of the court was "I think he answered it pretty well, gentlemen." The objection was: "We object to the witness answering in that way when he was asked a specific question to be answered 'yes' or 'no' under the general rules." There was further colloquy between the court and the attorneys, who renewed the motion to strike the answer. Then the judge made the quoted remark. There was no objection made or exception noted to this remark. The witness had been asked several questions as to his knowledge of Powell's standing as a business man, had been instructed not to go into details, had stated that Powell's reputation as being entitled to "confidence," etc. was bad, and was then asked by the court without objection "what was his standing as a business man was he entitled to credit or otherwise?" The answer that "he was judgment proof, bankrupt and insolvent," was in response to this question. All these questions and answers had reference to the year 1898, and there was no objection below that the answer was too broad. We, therefore, cannot consider it here. We discover no error under this assignment.

The *ninth* assignment of error was based on the alleged action of the court in striking that part of defendant Upchurch's testimony in which he stated that at the time he wrote the letter of February 11th, 1898, nothing was said between Powell and witness "about selling mules on a credit." There was a good deal of colloquy, but we cannot discover from the record any ruling by the court on this matter or any objection or exception to any ruling of the court upon it.

The *tenth* assignment is "the court erred in sustaining plaintiffs' objection to question put to defendant Upchurch, after Upchurch had answered without objection that he held Mizell in highest esteem "had you any object or motive to deceive Mizell?"

The record shows that Upchurch subsequently did substantially answer this question. He was allowed to testify that in writing the letter he had *no other object whatever* in view than to bring a man who wanted to buy some mules in connection with a man who wanted to sell them, and that he thought he was doing Mizell a favor. This testimony disclosed that he had no motive to deceive Mizell. There is consequently no error shown, assuming that the question was unobjectionable.

The *eleventh* assignment is "The court erred after plaintiffs sought to prove by witness' (Upchurch) that, in a certain conversation he had testified about, that Mizell had said that the taking of security for the mules would have been a reflection upon Dyal & Upchurch, in sustaining plaintiffs objection to the question "would it have been a reflection upon Dyal & Upchurch if he had declined to sell the mules on a credit?" It is not contended in this assignment that Upchurch ever testified that Mizell made the statement referred to, and if he had we can discover no error in the ruling of the court sustaining the objection to a question calling for Upchurch's opinion upon the effect of Mizell's declining to sell the mules on a credit, which is a different proposition.

The twelfth assignment under which is included six several assignments is in these words, *viz*: "The court erred severally in giving the following written charges severally given by the court on request of plaintiffs, and severally excepted to at the time, severally numbered 1, 2, 3, 5, 6, 7." These charges are as follows:

"1.  The court instructs you,  gentlemen of the  jury, that, if you believe from a preponderance of the evidence that the defendant wrote the letter set forth in the plaintiff's declaration, that the defendant  represented to the plaintiffs that one B. H. Powell was a man of integrity and fair business dealing and one who  could be  safely dealt with and trusted in the usual course of business; that such representation was made by the defendant to the plaintiffs, meaning that the plaintiffs should act upon it; that such representation was false and said Powell was not a man of integrity and fair business dealing and was not a man to be safely dealt with and trusted in the usual course of business; that the defendant, at the time he made the representation did not know whether such representation was true or not, and had no reason to believe he knew, but negligently and recklessly made such representation; that the plaintiffs believed such representation to be true in fact and believing such representation to be true he acted upon the same and sold to said B. H. Powell eight mules and harness or the value of $852.00; that said Powell was insolvent and parted with said  mules  and plaintiffs did not and were not able to obtain payment therefor from said Powell; that the plaintiffs have been damaged, if you find from a preponderance of the evidence the foregoing, then the court instructs  you that as  a matter of law the plaintiffs are entitled to recover, and your verdict must be for the plaintiff."

"2.  The court further instructs you, that the plaintiffs in this action are suing the defendant in an action of deceit, and in order for the plaintiffs to recover it is necessary for them to prove by a preponderance  of the  evidence that  the defendant  made the  presentation  set forth in the declaration of the plaintiffs meaning that the plaintiffs should act upon it; that such representation was

false and that the defendant when he made it knew it to be false, or did not know whether it was true or not; that the plaintiffs believing such representation to be true acted upon it and were thereby injured, and if you believe from a preponderance of the evidence that the plaintiffs have proven the foregoing, then your verdict must be for the plaintiffs."

"3. The court further instructs you that it is not necessary for the plaintiffs to prove that the defendant had actual knowledge of the falsity of the representations made, if you believe such representation was made and it was false, but it is sufficient that the defendant made the representation as of his own knowledge or in such absolute unqualified and positive terms as to imply his personal knowledge, when, in truth, defendant had no knowledge whether the representation was true or false."

"5. If a party has no knowledge on which to base a belief, he is considered reckless in making a statement pretending to give facts, and if you believe from a preponderance of the evidence that the defendant made the representation charged in the declaration, to the plaintiffs meaning that plaintiffs should act upon it, that such representation was false, that the defendant had no knowledge on which to base his belief, such representation was recklessly made, and if the plaintiffs, believing such representation to be true acted upon it, and were thereby injured your verdict must be for the plaintiffs."

"6. The court further instructs you that a corrupt intent to deceive is not necessary to the plaintiffs cause of action; it is not necessary that the plaintiffs should prove the representation to have been intentionally fraudulent, if the representation was known to be false, and was made with intent to induce plaintiffs to credit Powell; if the defendant, without any knowledge of the truth

or falsity of the representation wrote the plaintiffs as alleged, but represented his statement as true of his own knowledge, the law infers that the defendant intended to deceive; the intention of the 'defendant to deceive may be proved by showing that the defendant having no knowledge of the truth or falsity of his statement, yet represented his statement to be true of his own knowledge, the only proof of fraudulent intent required is that the defendant made a statement as of his own knowledge, which was false, not having any knowledge of the truth or falsity thereof."

"7. You will take and treat all the instructions of the court together, and if you find for the plaintiffs, you will then proceed to assess their damages and the measure of their damages will be the loss or injury you find from the evidence the plaintiffs sustained by reason of what you find the defendant did and this is what you find from the evidence was the market value of the property sold at the time and place of sale, together with interest thereon at eight per cent. per annum to date, and the expenses the plaintiffs, you find from the evidence were put to, if any, and incurred in endeavoring to recover the property or the price thereof."

All these charges were predicated on the following state of facts which the evidence tended to prove: "That the defendant on the 11th day of February, 1898, wrote the plaintiffs as follows:

Fort Moniac, Ga., Feb'y. 11th, 1898.
Messrs. J. Mizell & Bro.,
Kings Ferry, Fla.

Dear Sir:

This will introduce to you Mr. B. H. Powell who wants

30 S. C.

to buy some mules. Mr. Powell is right, and any favors you can show him will be appreciated by us.

Yours truly,

Dyal & Upchurch."

That said letter was on that day handed by defendant to one B. H. Powell for delivery to plaintiffs, and was delivered by said Powell to plaintiffs; that at the time said letter was so written the relations between Dyal & Upchurch and the plaintiffs were friendly, and have so remained to this day; that the plaintiffs had then and have now the highest confidence in the integrity and business capacity of said Dyal & Upchurch; that defendant knew the plaintiffs had mules for sale, and plaintiffs had no acquaintance with said Powell at that time; that the only representation. orally or in writing of any kind made by defendant to plaintiffs as to said Powell was the representation, if any, contained in that letter; that at the time said letter was written the defendant resided in Moniac, Georgia, the plaintiffs in Nassau county, Florida, and the said Powell in Duval county, Florida; that no evidence was introduced tending to show that defendant had at the time said letter was written any knowledge whatever of Powell's standing as a man of integrity and fair business dealing and as one who could be safely dealt with and trusted in the usual course of business; that Powell was in fact at the time said letter was written an insolvent against whom judgments had been recovered in his own county which were not paid and had no property in his own county out of which said judgments could be collected on executions sued out thereon and sought to be collected; and the general reputation of Powell in the neighborhood was that he was insolvent; that plaintiffs on the receipt of said letter, and in the absence of other information as to said Powell than that

disclosed to them in said letter, sold and delivered to said Powell eight mules at and for the price of eight hundred and fifty two dollars, which price was represented in two notes, then and there executed by Powell to them, one at 60 days, the other at four months; that, but for this letter plaintiffs would not have so sold and delivered said mules to Powell on a credit; that Powell had no purpose or intention at the time the mules were so sold and delivered to pay for them of which purpose plaintiffs were ignorant; that, on the maturity of the first note, one of the plaintiffs went over to see Powell, in Baker county, Florida, where he was engaged in hauling logs, for the purpose of collecting said note; that Powell would not pay said notes; but told said plaintiffs that he (Powell) "could not do anything" and could not, because of a judgment against him in Duval county purchase or hold property in his own name; that the mules were as soon as he got them from plaintiffs put in the name of his son or nephew as owner; that he (Powell) was then and there in Baker county in the woods a few miles from McLenny in possession of said mules, exercising ownership over them, and plaintiff saw the mules in his possession then and there and knew he was exercising ownership over them, and did not deny he was the owner of them; that plaintiffs made no effort whatever to recover the mules and did not know what disposition, if any, was made of them, and made no other effort to collect the notes, except to put them in the hands of their counsel, D. U. Fletcher, Esq., for collection, and that the fair market value of the mules at the time they were sold and delivered to Powell was $852.00."

The objections to charge number one (1) are that it is not charged in the declaration "that the defendant represented to the plaintiffs that B. H. Powell was a man of in-

tegrity and fair business dealing, and one who could be safely dealt with and trusted in the usual course of business;" 2nd, nor it is charged "that such representation was made by the defendant to the plaintiffs meaning that plaintiffs should act upon it;" 3rd, nor is there in the testimony upon which the charge is predicated a scintilla of evidence tending to show that *such* representation was in fact made.

The declaration alleges, among other things, that "defendant knowing the esteem and regard which plaintiffs held said firm of Dyal & Upchurch, and well knowing that plaintiffs would reply upon representations made to them by said firm," etc. wrote the letter of February 11th, 1898, "to induce the plaintiffs to believe that B. H. Powell was a man of integrity," &c. The letter itself, made a part of the declaration and delivered to the plaintiff under the circumstances alleged, and introduced in evidence, fairly imports what is alleged, and that Powell would ask *favors,* and that plaintiffs might safely act on the letter and grant him *favors* in connection with the business in hand, which was the purchase of mules. The most obvious favor under the circumstances, it seems to us, would be the granting of credit upon the purchase price. The effect of our previous decision in sustaining the declaration against the assaults made in the demurrer thereto was, that the construction of the meaning of the letter was properly stated in the declaration. The construction of a written instrument is a question for the court and not the jury. Solary v. Stultz, 22 Fla. 263, text 270.

It is again contended that the damage set up in the declaration is not the loss of the *possession* of the mules, but was damage from the loss of the property in them, and that this instruction stated a case different from that

Upchurch v. Mizell et al.—Opinion of Court.

in the declaration, by making plaintiffs case depend on the loss of possession. The declaration alleged that Powell made away with said chattels, and disposed of and placed the same beyond the reach of the plaintiffs, and the plaintiffs have not been paid for said property and are unable to obtain payment therefor of and from said Powell." It is further alleged that Powell was insolvent when the letter of February 11th, 1898, was written. The language of the instruction which is criticised is "that said Powell was insolvent and parted with said mules, and plaintiffs did not, and were not able to obtain payment therefor from said Powell, and that plaintiffs have been damaged." It does not seem to us that this criticism is valid. The principal question for the jury to determine was whether the plaintiffs were damaged by the deceit alleged to have been practiced on them, and which it is alleged induced them to give credit to an insolvent person from which a loss resulted to them. Neither the language of the declaration nor of the instruction is of a technical character, and understood in its ordinary meaning there is no conflict between them. The meaning of the language of the instruction is within the meaning of the language of the declaration.

The rule is clear in this State that instructions of the court to the jury must be confined to the issues made by the pleadings. Highnote v. Brigman & Crutchfield, 44 Fla. 589, text 600, 33 South. Rep. 303, and cases cited. But it is also well established that when it appears that the jury were not misled by the instruction, and upon a consideration of the whole case that substantial justice has been done between the parties by the verdict and judgment, this court will not reverse such judgment because of an erroneous instruction. Ibid. and Hooker v. Johnson, 10 Fla. 198. As stated, we think the meaning of the

language of the instruction was within the meaning of the allegation of the declaration. The evidence does not present a case of a mere loss of possession of the chattels. There is no proof of such knowledge by the plaintiffs of Powell's intention to defraud them when they sold the mules to him, as would clearly convey to them the idea that such fraud so vitiated the transaction, as to make voidable the sale of the mules, and thus fix upon them the obligation to repossess themselves of them as their own property of which they had merely lost the possession, in order to mitigate the damages. A person who buys goods upon credit thereby impliedly, if not expressly represents that he intends to pay for them. If therefore he then has no such intention, and a *fortiori* if he has then a present intention not to pay for them, and conceals this fact from the seller, there is such a misrepresentation of a material fact as will entitle the seller to avoid the sale. This intention must be one existing at the time of the sale and not merely one formed after the sale. It may be inferred from the circumstances. 2 Mechem on Sales Secs. 901, 902, 903 and notes. The evidence does not show that the Mizells became possessed of the true situation of Powell, as to his complete insolvency, and unreliability before the trial of the case. The fact that they found out sixty days after the sale that Powell had judgments against him, the amount of which was not given, and the fact that he had put the mules in the name of his son or nephew were suspicious circumstances, but not clear proof of his insolvency, nor that he had a fraudulent intent not to pay for them when he bought them. Moreover, there is no evidence of the value of the mules when the first note fell due, which was sixty days after the sale, or at any subsequent time, and no evidence, therefore, upon which the damages could have

been mitigated by the jury because of the supposed neglct of the Mizells in not retaking the mules. The only evidence before the jury for assessing damages was the value of the mules at the time they were sold.

The language of the second, third, fifth and sixth instructions for the plaintiffs are each subjected to severe criticism in the briefs of plaintiff in error. It is contended that these instructions were misleading, state a case different from the declaration and not supported by the ruling of this court in the cases of Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, Watson v. Jones, 41 Fla. 241, 25 South. Rep. 678, and Mizell v. Upchurch, 46 Fla. 443, 35 South. Rep. 9, in respect of the proper definition of the *scienter*, and in other respects. It would swell this opinion to a great length to set forth in full our views in regard to these objections. We have examined them carefully and are of opinion that they are untenable. We see no reason why the rulings in those cases should be repeated here.

The seventh instruction for the plaintiff is criticised as being without support in the evidence and pleadings, whether the fact or measure of damages is considered. We do not think the contention is sound. The evidence shows damage to the plaintiffs, and the court gave the correct rule for the admeasurement of damages. Furthermore it is contended, if we understand the brief, that plaintiffs were not entitled to recover because Powell intended to deceive them at the time he purchased the mules, and by reason of this fraud the plaintiffs never parted with the title to their property, and consequently when the first note was not paid, they should immediately have brought an action to recover the mules in order to mitigate the damages as much as possible. What we have

said in treating the objections to the first instruction applies here.

The eighteenth assignment of error is based on the refusal of the court to give the following instruction requested by the plaintiff in error and numbered 111: "The court further instructs the jury that a misrepresentation as to a material fact, knowing at the time it is untrue, upon which the plaintiff relies is in itself actionable; but a statement made by the defendant which is tantamount to an estimate of opinion as to value, condition or character is not actionable, unless the party making such misrepresentation resorts to fraudulent means to prevent the party who acts upon it from examining for himself into such misrepresentation."

The evidenec does not disclose the fact that the plaintiff in error, Upchurch, had any opinion whatever when he wrote the letter of the 11th of February, 1898, as to Powell's *value, condition* or *character,* except as stated in the letter. It does not appear that he was therein expressing an honest opinion based on a supposed knowledge of Powell's character or financial condition. That letter, doubtless, written hastily, and recklessly in our opinion, *implies* that he had knowledge of Powell's character and standing; that Powell, who wanted to buy mules from one who wanted to sell mules, was *"alright"* in the sense stated in the declaration, and that Powell would ask favors in buying mules, and that favors could be safely granted to him. In other words, that the declaration sets up substantially the meaning of the letter under the circumstances stated therein, and under the evidence predicated. We therefore think the instruction numbered 111 was properly refused as being inapplicable to the ˮevidence. We do not regard this as a case of *"Simplex commendatio."*

The nineteenth assignment of error is based on the action of the court in giving a charge of his own motion, on the *scienter* in the language of this court in Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, and Watson v. Jones, 41 Fla. 241, 25 South. Rep. 678. It need not be repeated here, but can be found on pages 263 and 264 of the last cited case. We think that this charge was correct, and perfectly applicable to the two counts of the declaration and to the evidence.

The only other assignment which is argued is one contained in the motion for a new trial, which was overruled, that the verdict is contrary to the evidence, or not supported thereby. The contention in the brief of plaintiff in error is that the evidence showed that the Mizells had never lost their property in the mules by reason of Powell's fraud and, therefore, they could have recovered them, and consequently that they were not entitled to recover the market value of the mules at the time of the sale. We have alrady given our views of this contention.

The judgment of the Circuit Court is affirmed.

TAYLOR, P. J., and PARKHILL, J., concur.

SHACKLEFORD, C. J., and WHITFIELD, J., concur in the opinion.

COCKRELL, J., disqualified.