TRI–STATE JUDICIAL SERVICES,
INC., Plaintiff,

v.

Richard MARKOWITZ and
Markowitz-Irwin   Process
Server, Inc., Defendants.

No. CV 84–0477.

United States District Court.
E.D. New York.

Dec. 20, 1985.

McLaughlin & Stern, Ballen & Ballen,
New York City, for plaintiff.

Hayt, Hayt & Landau by Laurence May,
Clifford J. Chu, Great Neck, N.Y., for de-
fendants.

## AMENDED MEMORANDUM AND ORDER

WEXLER, District Judge.

The order of this Court, dated December 2, 1985, is hereby vacated. This order supersedes and modifies that order in all respects.

In this diversity case plaintiff Tri-State Judicial Services, Inc. ("Tri-State") seeks monetary and injunctive relief from defendants Richard Markowitz and Markowitz-Irwin Process Server, Inc. ("M–I") for a breach of contract arising out of an agreement between the parties made on October 20, 1983. Tri-States now seeks to amend the complaint pursuant to Fed.R.Civ.P. 15(a) to (1) add defendant's wife, Penny Sue Markowitz and Southeast Lawyers Services, Inc. ("Southeast") as defendants and (2) assert claims for fraud and conversion against both Richard Markowitz and the proposed defendants. Plaintiff's motion is denied in all respects.

Rule 15(a) allows a party to amend the complaint with leave of the court and states that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court ruled in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) that this rule shall be construed liberally, but the Court also held that the grant or denial of a request to amend is within the discretion of the District Court and enumerated a number of bases upon which a court may deny a motion to amend. 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). Specifically, the Court stated that a trial court, in its discretion, may deny leave to amend a pleading because of undue delay, prejudice to the non-moving party, bad faith, or futility of amendment. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. *See* C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1487 (1971). In this Circuit, an amendment is considered futile if the amended pleading fails to state a claim, *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank-New York*, 494 F.2d 1334, 1338 (2d Cir.1974); *Johnson v. Par-*

*trederiet Brovigtank*, 202 F.Supp. 859 (S.D.N.Y.1962), or would be subject to a motion to dismiss on some other basis. *See, e.g., DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 424 (2d Cir.1949) (statute of limitations); *Jancyn Manufacturing Corp. v. County of Suffolk*, 583 F.Supp. 1364, 1377 n. 14 (E.D.N.Y.1984) (res judicata).

Defendants argue that the court should not grant the motion to amend the complaint because the amended complaint would not survive a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6), Fed.R. Civ.P. Specifically, defendants contend that: (1) Mrs. Markowitz is not subject to the personal jurisdiction of a New York court; (2) Richard Markowitz is not subject to personal jurisdiction for claims in tort; (3) the amended complaint does not state a claim in tort against any of the present or proposed defendants; and (4) there is no basis for joining Southeast as a defendant.

### 1. JURISDICTION OVER MRS. MARKOWITZ

■ Mrs. Markowitz, a Floridian since birth who has never been in New York, is neither a party nor signator to the October 20, 1983 agreement between Tri-State and M–I/Richard Markowitz. She has no agent for service in New York, no bank account, telephone listing, post office box, or property in New York, and has never done business in New York. Mrs. Markowitz has no connection to her husband's business and has neither solicited business in New York nor derived substantial revenue from goods used or services rendered in New York. Finally, Mrs. Markowitz has no connection with Southeast, the proposed co-defendant. Affidavit of Penny Sue Markowitz, ¶¶ 2–4.

As a federal court sitting in diversity, this Court must look to local law to determine the existence of *in personam* jurisdiction. *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967). Mrs. Markowitz must be subject to the jurisdiction of a New York Court under either CPLR § 301 or § 302(a) in order for this Court to exercise personal jurisdiction over her.

N.Y.Civ.Prac.Law §§ 301, 302(a) (McKinney 1972). Quite clearly, Mrs. Markowitz is not amenable to jurisdiction under § 301.[1] She is not a New York resident; she does no business here; she has not consented to New York's jurisdiction; she had no agent for process in New York; and so long as she does not travel to New York, she cannot be served here.

Turning then to § 302(a), the long-arm statute, it is equally apparent there is no basis for the exercise of long-arm jurisdiction by a New York court over Mrs. Markowitz. In relevant part, § 302(a) provides that:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply the goods or services in the state; or

2. commits a tortious act within the state except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y.Civ.Prac.L. § 302(a) (McKinney 1972). Jurisdiction over Mrs. Markowitz does not exist under § 302(a)(1) because she has neither transacted business within New York nor contracted to supply goods or services

here. Mrs. Markowitz has never been in New York and therefore she cannot have committed a tort here under § 302(a)(2). Equally, § 302(a)(3) is inapplicable because there is absolutely no evidence that Mrs. Markowitz committed any tortious conduct with respect to plaintiff. Bearing in mind that plaintiff bears the burden of demonstrating the existence of the Court's personal jurisdiction, *Lehigh Valley Industries v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975), there is no allegation that Mrs. Markowitz had anything to do with either New York or her husband's business dealings. Mrs. Markowitz is merely the wife of her defendant husband. Even if Mrs. Markowitz committed a tort, it is unlikely that there was an injury in New York. In addition, she owns no property in New York and therefore § 302(a)(4) is unavailable to plaintiff.

Finally, the exercise of personal jurisdiction over Mrs. Markowitz would surely violate the Due Process Clause. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Accordingly, plaintiff's motion to amend the complaint to add Mrs. Markowitz as a defendant is denied because of a lack of *in personam* jurisdiction. Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); N.Y.Civ. Prac.L. §§ 301, 302(a) (McKinney 1972).

## 2. JURISDICTION OVER MR. MARKOWITZ

Richard Markowitz, a native Floridian, has lived in Florida all his life except for a short time during his childhood when he resided in New York with his parents. Mr. Markowitz has never appointed an agent for service of process in New York and he did not consent to *in personam* jurisdiction in his October 20, 1983 agreement with Tri-State. Like his wife, Mr. Markowitz has no post office box, bank account, office, or telephone listing in New York. He claims he has neither "engaged in any reg-

---

1. Section 301 states that "[a] court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. Civ.Prac.L. § 301 (McKinney 1972).

ular solicitation of business or persistent course of conduct in New York nor have I ever derived substantial revenue from goods used or services rendered or used in that state." Affidavit of Richard Markowitz, ¶¶ 4, 5. Mr. Markowitz admits that he has been in New York on two occasions since the beginning of his relationship with Tri-State; once on October 20, 1983 to sign the agreement with Tri-State and a second time in February 1984 to attend a hearing before this Court on a preliminary injunction.[2]

Plaintiff contends that Mr. Markowitz is present in New York because he was "doing business" here under CPLR § 301, and this "presence" would subject him to a cause of action for fraud and deceit.[3] In this case, Mr. Markowitz is not subject to jurisdiction under § 301 because he is not a New York domiciliary, was not served in New York, has no agent for service here, and has not consented to jurisdiction in New York. With respect to M–I under New York law if a defendant corporation "is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). But even the application of the "doing business" test enunciated in *Bryant v. Finnish Airlines*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965), to Mr. Markowitz's activities in New York does not reveal a "presence" here. *See Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). Mr. Markowitz has no office or telephone list-ing in New York. He owns no property here and does not maintain a post office box in New York. Therefore, Tri-State cannot establish jurisdiction over Mr. Markowitz or M–I by virtue of § 301.

Turning to § 302(a), it should first be noted that if *in personam* jurisdiction can only be established over Mr. Markowitz by virtue of the long-arm statute, CPLR § 302(a), then each of Tri-State's proposed tort claims against Mr. Markowitz must have an independant jurisdictional basis under § 302. N.Y.Civ.Prac.L. § 302(c) (McKinney 1972). Tri-State contends that Richard Markowitz's conduct makes him subject to the jurisdiction of a New York court pursuant to CPLR § 302(a)(3) because he committed a tortious act outside New York causing injury within the state.

Plaintiff must overcome the threshold requirement that there was an injury within New York. An injury does not occur in New York merely because a plaintiff is domiciled here or does business here. In suits involving personal injury or property damage, where the locus of the injury can be determined easily, merely because the New York plaintiff returns to New York and suffers an economic loss here after an out-of-state personal injury will not give rise to *in personam* jurisdiction under 302(a)(3). *Black v. Oberle Rentals, Inc.*, 55 Misc.2d 398, 285 N.Y.S.2d 226 (Sup.Ct. Onondaga Cty.1967). Perhaps relying more on the Due Process Clause than statutory interpretation, that Court reasoned that § 302(a)(3)

> looks to the imprinting of the original injury within the State of New York and not resultant damage, in order that juris-

---

**2.** Mr. Markowitz was not served on either occasion and, in any event, he would be immune from service with respect to the February 1984 visit. *See* D. Siegal, *Handbook on New York Practice* § 68 at 71 (1978).

**3.** Mr. Markowitz is not a corporation, but Markowitz-Irwin Process Server, Inc. ("M–I") is a corporate defendant. It is unclear, however, whether Tri-State is seeking to establish personal jurisdiction through § 301 over Mr. Markowitz, M–I or both. Though Tri-State's notice of motion seeks leave to amend only against Mr. Markowitz, their papers speak to the activities of both Mr. Markowitz and M–I. Construing the pleadings most favorably to plaintiff, the Court assumes, however, that Mr. Markowitz would be present in New York for the purpose of CPLR § 301 if Tri-State demonstrates that M–I were found to be "doing business" here. For example, Mr. Markowitz could be considered an agent for M–I. Similarly, M–I could be considered the alter ego of Mr. Markowitz. Accordingly, the Court will look to the acts of both M–I and Mr. Markowitz for the purposes of § 301.

diction might be effectuated. To hold otherwise would open a veritable Pandora's box of litigation subjecting every conceivable prospective defendant involved in an accident within a New York domiciliary to defend actions brought against them in the State of New York. This is hardly the minimal contact with the state prerequisite to the exercise of its power over a prospective defendant. *Black*, 285 N.Y.S.2d at 229. The reasoning of the Court in *Black* has won wide approval in this Circuit in the context of commercial litigation even though *Black* was a personal injury case. *See American Eutectic Welding Alloys Sales v. Dytron Alloys Corp.*, 439 F.2d 428, 432–35 (2d Cir. 1971); *Friedr. Zoellner (New York) Corp. v. Tex Metals Company*, 396 F.2d 300, 302–03 (2d Cir.1968); *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 312–13 (S.D.N.Y.1983); *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374, 1379–80 (S.D.N.Y. 1975); *Sybron v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.Y.S.2d 1055 (1978).

In *Chemical Bank*, Judge Griesa held that there was no injury in New York under § 302(a)(3) when plaintiff alleged fraud and conversion by a Maryland defendant on acts occurring outside New York. After analyzing the relevant precedent, Judge Griesa determined that the domicile of the plaintiff, there a national bank, was less significant in a commercial tort situation than "the place where the critical events associated with the dispute took place." 403 F.Supp. at 1380 (citations omitted). Judge Griesa concluded that "in connection with the tort of conversion the injury must be deemed to occur in the place where the defendant's acts respecting the property are committed." *Id.*

■ Turning then to the facts of this case, it is clear Tri-State suffered no injury in New York. The agreement between the parties required Tri-State to supervise the billing and invoicing of all customers. Payments for services rendered by defendant would be sent by a customer directly to Tri-State in New York. After deducting an agreed-upon percentage, Tri-State would remit the balance to defendant as compensation. Defendant agreed to pay all of its own expenses incidental to the operation of its business. In the proposed amended complaint, Tri-State alleges that Richard Markowitz diverted funds belonging to Tri-State toward the purchase of a house and other personal expenses. The basis of this allegation comes from balance sheets supplied by M–I's Florida accountants detailing that firm's disbursements during February and March of 1984. If these disbursements constituted the conversion and/or fraud complained of, then the "place of the defendant's acts" could only be Florida and not New York. Tri-State's unspecified and unsupported allegation that Mr. Markowitz "caused injury to a corporation within ... New York" is insufficient to establish *in personam* jurisdiction over defendant under § 302(a)(3). *See Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 313 (S.D.N.Y.1983) (mere loss of profits by a New York corporation does not constitute an injury in New York for the purposes of § 302(a)(3)). As noted earlier, this discussion is equally applicable to Tri-State's attempt to assert jurisdiction over Mrs. Markowitz under § 302(a)(3).

Although this Court need not reach the constitutional issue, it is unlikely that Tri-State's attempt to exercise jurisdiction over Richard Markowitz on the tort claims would also exceed the parameters of the Due Process Clause. *Worldwide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Accordingly, plaintiff's motion to amend the complaint to add claims in conversion and deceit against defendant Richard Markowitz is denied because of a lack of *in personam* jurisdiction. Fed.R.Civ.P. 15(a). *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); N.Y.Civ. Prac.L. §§ 301, 302(a) (McKinney 1972).

### 3. FAILURE TO STATE A CLAIM IN FRAUD AND/OR CONVERSION

Assuming, however, that there is *in personam* jurisdiction over either Mr. or Mrs.

Markowitz, the Court turns to the question of whether the proposed amended complaint states a cause of action in fraud and/or conversion. Paragraphs 15–17 of Tri-State's proposed amended complaint state that defendants used funds belonging to M–I to pay for the purchase of a home and other personal expenses, that these funds belonged to plaintiff, and that this constituted a conversion. Paragraphs 19–20, which form the third claim, also state that defendants diverted funds of M–I for personal use, that these funds belonged to Tri-State, and that this diversion constituted a fraud and deceit on Tri-State. Defendants contend that the proposed amended complaint fails to state a claim in either conversion or fraud.

The Court begins with the principle that a motion to dismiss for failure to state a claim on which relief can be granted tests only the sufficiency of the complaint. Fed. R.Civ.P. 12(b)(6), *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). For the purpose of a Rule 12(b)(6) motion, the well-pleaded material allegations of the complaint are taken as admitted, along with such reasonable inferences as must be drawn in plaintiff's favor. *Kirshner v. United States,* 603 F.2d 234, 236 (2d Cir.1978); *Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). The motion should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The Court must first determine what law should apply in this case. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Defendants contend that the Court should apply Florida law. Tri-State argues that New York law should apply or, in the alternative, the issue is irrelevant because there are no substantive differences between New York and Florida law in conversion and fraud. At this stage of the proceedings, the Court is reluctant to decide which state's law controls. Given the ambiguities of New York's choice of law doctrines for tort cases, *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 847 (2d Cir.1984), the limited fashion in which the parties have addressed the choice of law question, the apparent similarity between New York and Florida law of conversion, *compare Goodrich v. Malowney,* 157 So.2d 829 (Fla.App. 1963) *with Meyer v. Prize,* 250 N.Y. 370, 165 N.E. 814, (1929), and the inappropriateness of a Rule 15(a) motion as a setting for determining the law of the case, the Court will defer a decision on the law to be applied in the tort claim.[4]

## A. FRAUD CLAIM

■ Turning first to the proposed fraud claim, Tri-State's proposed amended complaint quickly runs afoul of Rule 9(b), which states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This rule, which codifies the long-standing practice under the common law, holds the defrauded plaintiff to a higher standard of pleading than other tort plaintiffs. *Zerman v. Ball,* 735 F.2d 15, 20–23 (2d Cir. 1984); *Armstrong v. McAlpin,* 699 F.2d 79, 88–89 (2d Cir.1983); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972). Assuming but not deciding that because the injury occurred there, Florida law would apply with respect to the fraud claims, Tri-State would

---

**4.** The Court is also sensitive to the problem in determining which law to apply with respect to the breach of contract claim. In the area of contract law, New York's choice of law doctrine is hardly clearer than those in tort. *Compare* 19 N.Y.Jur. *Conflict of Laws* § 35 (modern rule in contracts cases) and § 39–41 (torts) (1982). It is not unlikely that the Court would be referred to Florida law to resolve the tort claims and New York law to resolve the contract claims.

*Id. Compare Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978) ("lex loci deliti remains the general rule in tort cases to be displaced only in extraordinary circumstances") *with Inter-Continental Planning Limited v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 581 (1969) (applying "interest" analysis in a contract case).

have to "allege (1) that defendant made a representation on which plaintiff was meant to act; (2) that the representation was false and defendant knew that fact, and (3) that plaintiff relied on the representation to his injury." *American International Land Corporation v. Hanna*, 323 So.2d 567 (Sup.Ct.1976) (citing *Mizell v. Upchurch*, 46 Fla. 443, 35 So. 9 (1903)). Applying the specificity requirement of Rule 9(b), Tri-State must plead: (1) the representation upon which it relied; (2) defendant knew the representation was false when made; (3) the actions taken in reliance on the misrepresentation; and (4) the nature of the detriment suffered.

Even given the liberal construction afforded the complaint in the context of a 12(b)(6) motion to dismiss, Tri-State's proposed amended complaint falls far short of the requirements of Rule 9(b). Tri-State's proposed amended complaint merely reiterates the allegation of the conversion claim and adds a paragraph stating, "This diversion of funds belonging to plaintiff by these defendants constitute [sic] a deceit and fraud by the defendants on the plaintiff." Proposed Amended Complaint, ¶ 21. Despite the liberal pleadings allowed under the Federal Rules, *see* Rule 8(e) (allowing alternative or hypothetical pleadings), Rule 9(b) augments the requirements of notice pleading in fraud actions. In the words of the late Circuit Judge Leonard Moore "Rule 9(b)'s specificity requirement stems ... from the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing." *Segal v. Gordon*, 467 F.2d at 607 (citations omitted). Tri-State's conclusory allegations of fraud do not meet this standard, either under Florida or New York law. In any event, there is no personal jurisdiction over either defendant for fraud.

## B. CONVERSION CLAIM

■ The Court now turns to Tri-State's motion to add a claim for conversion against Richard Markowitz. Again, assuming but not deciding that the place of the injury was in Florida and therefore Florida law would apply, the Court is persuaded that the proposed amended complaint would state a claim for conversion. Under Florida law, a complaint states a claim for conversion if an act of dominion is asserted over another's property inconsistent with ownership of it. *Goodrich v. Malowney*, 157 So.2d 829, 831 (Fla.Dist.Ct.App.1963). Florida courts have held that money can be a subject of conversion so long as it consists of specific money capable of identification. Florida law does not require that the money be earmarked, but there must be an obligation to keep the money intact or deliver it. *Aero International Corporation v. Florida National Bank of Miami*, 437 So.2d 156, 159 (Fla.Dist.Ct.App. 1983) (citations omitted); *Allen v. Gordon*, 429 So.2d 369, 371 (Fla.Dist.Ct.App.1983).

In the instant case, Tri-State alleged that Richard Markowitz was in possession of money belonging to Tri-State and wrongfully converted it when he used the money for personal expenses. Proposed Amended Complaint, ¶¶ 14–17. From the pleadings, the Court cannot determine how Mr. Markowitz and M–I came into possession of money belonging to Tri-State. The October 20, 1983 agreement enabled Tri-State to bill M–I's customers directly. Payment was to be sent directly to Tri-State where, only after deducting a percentage as a commission, would any money be forwarded to M–I in Florida as payment. The agreement made no provision for M–I to collect payments or do anything on behalf of Tri-State with respect to money belonging to Tri-State.

Nevertheless, taking the proposed amended complaint as true, as the Court must in a motion to dismiss for failure to state a claim, Mr. Markowitz's expenditure of Tri-State's money for matters unrelated to their agreement and without Tri-State's consent constitutes a conversion under Florida law and probably under New York law as well. *See* 23 N.Y.Jur. *Conversion* § 12 (1982).

Defendant contends that the proposed amended complaint does not state a claim

for conversion under Florida law because this is an action to pay money. Defendant's citation to *Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla.Dist.Ct.App.1970) is inapposite. There is no indication from the pleadings that Mr. Markowitz or M–I had an "open account" with Tri-State, as was the case in *Belford* or that the October 20, 1983 agreement created a debtor-creditor relationship. The proposed amended complaint alleges that defendant possessed and wrongfully used funds belonging to Tri-State, not that defendant was indebted to Tri-State. *See All Cargo Transport Inc. v. Florida East Coast Railway*, 355 So.2d 178 (Fla.Dist.Ct.App.1978) (failure to return overpayment on account due was conversion). Although the Court is persuaded that the proposed amended complaint states a claim against Mr. Markowitz in conversion, granting leave to amend would be futile because of a lack of *in personam* jurisdiction.

### 4. SOUTHEAST LAWYERS SERVICES, INC.

Finally, Tri-State has sought to join Southeast as a defendant and assert claims in both contract and tort against it. For a myriad of reasons, the motion to join Southeast is denied. First, Southeast is not mentioned anywhere in the proposed amended complaint, except in Paragraph 4, the jurisdictional statement. Second, Southeast was dissolved as a corporation under Florida law in 1984. Third, Southeast is not a party to the October 20, 1983 agreement and cannot be liable for breach of contract. Fourth, there is no showing that a New York court has *in personam* jurisdiction over Southeast. Finally, fifth, there is no allegation that the now-dissolved Southeast was in any way associated with or a successor or predecessor in interest to M–I or Richard Markowitz. Consequently, there is no allegation of wrongdoing by Southeast.

Accordingly, this Court's order of December 2, 1985 is vacated and superseded by this order in all respects. Plaintiff's motion pursuant to Rule 15(a) to amend the complaint to add Mrs. Markowitz and Southeast as defendants is denied. In addition, plaintiff's motion to add claims in fraud and conversion against Richard Markowitz is denied.

SO ORDERED.